Heather L. Thuet, #10106
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah  84111
Telephone:  (801) 323-5000
Facsimile:   (866) 562-7506
Heather.Thuet@chrisjen.com
*Attorneys for Plaintiff*

---

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH**

---

| | |
|---|---|
| TONYA KIM BLACKBURN,<br><br>  Plaintiff,<br><br>vs.<br><br>UNITED STATES; MOAB REGIONAL HOSPITAL; ANGELA ALEXANDER, M.D.; PATRICK SCHERER, D.O.; GEORGIA RUSSELL, APRN; CYNTHIA BARNES, RN; MOAB FAMILY MEDICINE; DYLAN COLE, D.O.; EVE MAHER-YOUNG, PA-C; and DOE INDIVIDUALS 1 through 10,<br><br>  Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Case No. 2:18-cv-00116<br><br>Magistrate Judge Paul M. Warner |

COMES NOW Plaintiff Tonya Kim Blackburn, by and through undersigned counsel, Heather L. Thuet of Christensen & Jensen, P.C., and pursuant to the Federal Rules of Civil Procedure, who complains and alleges against Defendants as follows:

## PARTIES

1. Plaintiff Tonya Kim Blackburn ("Kim") developed septic shock due to an obstructive 13 mm kidney stone that resulted in quadruple amputation which could have been prevented had Kim received medical care meeting the standard of care from Defendants.

2. Kim is a resident of Grand County, State of Utah.

3. Elizabeth Lazier Holtby, PA ("Beth Holtby") is a physician assistant and is deemed an employee of the Public Health System for purposes of the Federal Tort Claims Act ("FTCA") medical malpractice liability coverage for the period September 16, 2014 through December 31, 2015 for the care provided to Kim at the Moab Free Health Clinic.

4. Patrick Mark Scherer, D.O. ("Dr. Scherer") is a physician licensed under the laws of the State of Utah, and was at times relevant to this action the medical director of the Moab Free Health Clinic and the supervising physician of Beth Holtby, and is deemed an employee of the Public Health System for purposes of the Federal Tort Claims Act ("FTCA") medical malpractice liability coverage for the period January 1, 2014 through December 31, 2014 and January 1, 2015 through December 31, 2015 for the care provided to Kim at the Moab Free Health Clinic.

5. Under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), the United States Government is responsible for all acts and omissions of Beth Holtby, Dr. Scherer, and other deemed employees of the Moab Free Health Clinic (the "Health Clinic").

6. Defendant Moab Regional Hospital, acting by and through its agents and employees, at all times mentioned herein is a Utah Corporation with its principal place of business in Grand County, State of Utah.

7. Defendant Angela Alexander, M.D., is a physician licensed under the laws of the State of Utah and at all times relevant hereto was engaged in the practice of medicine acting within the course § and scope of her employment with Moab Regional Hospital in Grand County, State of Utah in providing care to Kim.

8. Defendant Dr. Scherer was engaged in the practice of medicine acting within the course and scope of his employment with Moab Regional Hospital in Grand County, State of Utah, while providing care to Kim at Moab Regional Hospital.

9. Defendant Georgia Russell, APRN is a family practice nurse practitioner licensed under the laws of the State of Utah and at all times relevant hereto was engaged in the practice of medicine acting within the course and scope of her employment with Moab Regional Hospital in Grand County, State of Utah while providing care to Kim.

10. Defendant Cynthia Barnes, RN, is a registered nurse licensed under the laws of the State of Utah and at all times relevant hereto was engaged in the practice of medicine acting within the course and scope of her employment with Moab Regional Hospital in Grand County, State of Utah while providing care to Kim.

11. Defendant Moab Family Medicine, acting by and through its agents and employees, at all times mentioned herein is a Utah Corporation with its principal place of business in Grand County, State of Utah.

12. Defendant Dylan Cole, D.O. is a physician licensed under the laws of the State of Utah and at all times relevant hereto was engaged in the practice of medicine acting within the course and scope of his employment with Moab Family Medicine in Grand County, State of Utah while providing care to Kim.

13. Defendant Eve Maher-Young, PA-C, is a physician assistant licensed under the laws of the State of Utah and at all times relevant hereto was engaged in the practice of medicine acting within the course and scope of her employment with Moab Family Medicine in Grand County, State of Utah while providing care to Kim.

14. Defendant Doe Individuals 1 through 10 are set forth herein as all currently unknown persons who have responsibility for the events and happenings referred to in this Complaint, causing injuries and damages to Plaintiff, or who are otherwise interested in the subject matter of this Complaint. At such time as the names of said Doe Individuals have been ascertained, Plaintiff will move to join them in this action.

## JURISDICTION

15. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1346(b).

16. Pursuant to 28 U.S.C. § 1402(b) the proper venue of this action is the District of Utah.

17. An administrative claim dated July 27, 2016 was received by the Department of Health and Human Services (HHS) on August 1, 2016, and a final determination of the administrative claim, as required by 28 U.S.C. §§ 2401(b), 2675(a) was issued on February 13, 2017.

18. In accordance with 28 C.F.R. § 14.9 request for reconsideration was made on February 27, 2017 and the time has elapsed on the request for reconsideration.

19. Pursuant to Utah Code Annotated § 78B-3-416, the Division of Occupational and Professional Licensing issued Certificates of Compliance on May 1, 2017 and on November 27,

4

2017 based upon pre-litigation hearings before the Division of Occupational and Professional Licensing in this matter.

20. All statutory conditions precedent to the commencement of this action have been satisfied.

## GENERAL ALLEGATIONS

21. As a result of the substandard care provided by Defendants in December 2014, January 2015 and February 2015, Kim developed urosepsis from a poorly managed kidney infection and undiagnosed 13 mm kidney stone that led to septic shock and the amputation of both her hands and feet.

22. On December 21, 2014, Kim presented to Moab Regional Hospital emergency department for left abdominal pain. Her medical record notes that "she has had this multiple times before." Her exam reveals "ill appearing but non-toxic" with "a little bit of left-sided CVA tenderness." She is diagnosed with left pyelonephritis. Her treatment plan includes Rocephin 1 gm IV, Ceftin 500 mg PO bid x 10 days, FU with her doctor in the next 24-48 hours or return to the ER sooner if she has worsening symptoms. Cynthia Barnes, RN, under supervision of Patrick Scherer, D.O., notes that Kim has barrier of having no local primary care physician. Urine culture is initiated. No renal imaging studies are performed.

23. She was treated with antibiotics, fluids and anti-nausea medications.

24. On December 26, 2014, Kim returned to Moab Regional Hospital emergency department as instructed with worsening symptoms despite treatment with antibiotics. She has not improved and her symptoms include left flank pain, fever, and vomiting. Exam now reveals a fever of 100.6. Urine culture results from 12/21/2014 were available revealing >100,000

5

colony count of Staphylococcus epidermis with resistance patterns noted.  This culture report revealing unusual bacterial growth for pyelonephritis is not referenced in the Physician Record nor are the antibiotic sensitivities noted.

25. She is once again diagnosed with pyelonephritis.

26. Despite her worsening symptoms, her treatment plan again includes Rocephin 1 gm IV with repeat dose in 24 hours and completion of oral Ceftin as already prescribed.  No imaging is performed and no change in antibiotic therapy is initiated.

27. At this point in time, emergency medicine standard of care advises renal imaging, urgent urologic consultation, and/or change in treatment regimen based on urine culture sensitivities.

28. Recommending that the patient make "appointment with urologist" does not meet the standard of urgent urologic referral.

29. Georgia Russell, APRN, under supervision of Angela Alexander, M.D., did not perform any of these interventions resulting in breach of the standard of care.

30. On December 27, 2014, Kim returns to Moab Regional Medical Center as instructed for repeat dosing of Rocephin IV.  Her vital signs remain abnormal with temp 100.1 and pulse 106.  No physical exam other than A&Ox3 is documented.  She is given Rocephin 1 gm IV and her IV is removed.  She is discharged for outpatient follow up.

31. Emergency medicine standard of care advises repeat provider evaluation in the setting of continued symptoms and abnormal vital signs.

32. Renal imaging and/or urgent urologic consultation should also have been addressed.

33. This omission in Kim's treatment plan is a breach in the standard of emergency medical care.

34. On December 29, 2014, Kim presents for outpatient follow up of pyelonephritis with Eve Maher-Young, PA-C, under supervision of Dylan Cole, D.O., at Moab Family Medicine. Despite completing 8 days of Ceftin and 3 doses of IV Rocephin, Kim is still experiencing left flank pain. Urinalysis is performed but results are "obscured by pyridium."

35. Ms. Maher-Young's record states that she was sending Kim's urine for culture. This did not occur and as a result no culture was performed on 12/29/2014.

36. No follow-up care concerning Kim's pyelonephritis was provided by Ms. Maher-Young, Dylan Cole, D.O., or others at Moab Family Medicine. Kim reports a history of recurrent UTI's, the last episode three months before, and expressed concern about recurrent UTI's. No renal imaging or urologic consultation was discussed or initiated.

37. Ms. Maher-Young breached the standard of care by failing to repeat urine culture, consider renal imaging and/or urologic consultation despite ongoing symptoms of flank pain following 8 days of antibiotic therapy for pyelonephritis.

38. Kim was an established patient of Moab Free Health Clinic, which served as a primary care provider.

39. On January 13, 2015, Beth Holtby at the Moab Free Health Clinic assumed Kim's follow-up care.

40. Beth Holtby is a physician assistant with Utah License No. 8576577-1206.

41. Patrick Mark Scherer, D.O. is Beth Holtby's supervising physician. Dr. Scherer is also the Medical Director of the Moab Free Health Clinic.

42. Beth Holtby's January 13, 2015 chart note states that she is aware that Kim had been treated in the emergency room for kidney infection in December 2014.

43. Beth Holtby notes specific drugs that Kim was prescribed during her emergency room visit to treat the kidney infection, including Rocephin and Cipro.

44. Kim informed Beth that she had "a lot of kidney infections" and that since her visit to the emergency room, she "still has some pain over kidneys," "pain in kidneys after urinating in morning," "pain localized in kidneys 'tender'," "dry-heaves for two weeks," "sluggish and tired," "still not feeling well," and unable to work for three weeks.

45. Beth Holtby did not request a copy of Kim's records from any of Kim's visits to Moab Regional Hospital.

46. Beth Holtby knew that Kim still had pain in her left kidney even though she had already received IV antibiotics as well as finished a 10-day course of antibiotics.

47. Beth Holtby did not order a CT scan, a KUB radiography, or an x-ray.

48. A CT scan, a KUB radiography, or an x-ray would have shown the thirteen millimeter (13 mm) stone in Kim's left kidney.

49. Beth Holtby did not refer Kim to a urologist.

50. Instead, on January 13, 2015, Beth Holtby took a urine sample and prescribed Kim a seven (7) day course of Cephalexin, another antibiotic, and advised her to return for a urinary analysis after finishing the medication.

51. Kim filled the prescription on January 13, 2015 and took the antibiotic as prescribed.

52.     Two days later, on January 15, 2015 a urine culture was performed by Cedar Diagnostics Lab on the 1/13/15 urine sample.

53.     The culture showed no growth after day one. However, the Final Report showed three or more colony types at forty-eight (48) hours with no predominating organism, suggestive of contamination.

54.     Between January 15, 2015 and January 29, 2015, a repeat urine culture was not requested or performed.

55.     On January 20, 2015, Moab Free Health Clinic followed up with Kim, and their Telephone Follow-up Log reflected: "feel 'all right, still discomfort,' urinary frequency. No fever. Night sweats- LMP ½ years ago.  Will get UA later this week."

56.     On January 29, 2015, Moab Free Health Clinic asked Kim to come to the clinic and provide a urine sample.

57.     On January 29, 2015, after completing the Cephalexin regimen, Kim returned to the Moab Free Health Clinic and gave a urine sample.

58.     There, her vital signs were not taken, and she was not evaluated by a physician or physician assistant, or other medical provider.

59.     That same day, Moab Free Health Clinic Telephone Follow-up Log notes that the urinalysis results were emailed to Beth Holtby, "awaiting reply."

60.     On February 3, 2015, at approximately 12:34 PM, Beth Holtby faxes a request for "Urinalysis with micro" to Cedar Diagnostics Lab.

61. The Urinalysis with Microscopic Exam report dated the same day at approximately 1:43 PM showed "Blood: trace-lysed; Nitrates: Positive; Squamous epithelial cells: Few; and Urine Bacteria: Many."

62. The Cedar Diagnostics Lab Final Report, dated February 3, 2015, for the 1/29/15 urine sample showed "Urine Colony Count > 100,000 cfu/mL Gram Positive Organism isolated at 72 hours. Staphylococcus epidermis. Resistant to Trimethoprim/sulfa."

63. As of January 29, 2015, Kim still has a kidney infection. Antibiotic therapy had proven unsuccessful. Kim's kidney stone was still undiagnosed.

64. Kim is not asked to come to the clinic.

65. Kim is not referred to a urologist.

66. A CT scan, a KUB radiography, or an x-ray is not ordered.

67. During these three weeks, the Moab Free Health Clinic also undertook no effort to have Kim seen by a medical provider.

68. Another 72 hours elapse without providing any care to Kim.

69. On February 6, 2015, Moab Free Health Clinic Telephone Follow-up Log notes: "Called in Rx for Macrobid 100 mg bid for 5 days, printed coupon for Kim, informed her it was called in at City Market."

70. On February 6, 2015, Kim came into the clinic and picked up a coupon.

71. On February 6, 2015, Kim's vital signs were not taken, and she was not evaluated by a physician or physician assistant, or other medical provider. Kim is not referred to a urologist, and a CT scan, a KUB radiography, or an x-ray is not ordered.

72. On February 6, 2015, Kim filled the prescription for a five-day regimen of Macrobid, an antibiotic.

73. Macrobid is indicated for the treatment of acute uncomplicated urinary tract infections.

74. The manufacturer of Macrobid explicitly states: "Nitrofurantoin is not indicated for the treatment of pyelonephritis."

75. Kim did not have an acute uncomplicated urinary tract infection: she had a kidney stone and complicated kidney infection that had not responded to IV antibiotics or oral antibiotics.

76. The standard of care when prescribing Macrobid for an acute uncomplicated urinary tract infection is for a seven (7) day period.

77. Kim took the prescribed Macrobid, but four days later was not feeling better.

78. On February 10, 2015, Kim was called and told there was an available walk-in appointment. Kim indicated that she had an appointment in less than two weeks, on February 23, 2015.

79. On February 10, 2015, Kim was not asked how she was doing, nor was she told she needed to be seen in the clinic before February 23, 2015.

80. Defendants failed to comply with the standard of care in providing follow-up care to Kim.

81. When she arrived for her February 23, 2015 appointment, Kim was septic and was told to go to the emergency room, but the Moab Free Health Clinic did not call an ambulance.

82. Once at the emergency room in Moab, Kim was transported by helicopter to St. Mary's hospital in Grand Junction, Colorado.

83. At St. Mary's, Kim presented with acute renal failure and septic shock due to left pyelonephritis due to obstructing ureteral stone.

84. At St. Mary's, on February 23, 2015 Kim had a CT scan which revealed the following: Bilateral pleural effusions, bibasilar pneumonic opacities, 13 mm calculus left UPJ resulting in moderate hydronephrosis, mild bilateral perinephric stranding noted cannot exclude pyelonephritis, gallbladder distention possible gallstones or sludge.

85. Urologist Amir Z. Beshai opined that given its size, the 13 mm kidney stone would have been detected by renal imaging in December 2014.

86. On February 24, 2015, she underwent an emergent unsuccessful attempt of lithotripsy but required left ureteral stent placement for a left ureteropelvic junction stone with urosepsis.

87. Kim's pyelonephritis was complicated by respiratory failure requiring mechanical ventilation and septic shock on multiple pressors.

88. On March 3, 2015, the hospital noted that Kim had gangrene in her hands and feet due to pressor injury.

89. As a result of the gangrene, she was recommended for bilateral amputations of both her hands and feet.

90. On March 25, 2015, Kim underwent right transmetatarsal amputation of foot and left transmetatarsal amputation of foot for dry gangrene necrosis of bilateral forefeet.

91. On March 26, 2015, Kim experienced right transradial amputation and application of clam shell forearm splint for ischemic necrosis, right hand and forearm with dry gangrene.

92. On April 7, 2015, Kim underwent shockwave lithotripsy for left renal calculus.

93. On April 10, 2015, Kim had left flexible ureterorenoscopy with holmium laser lithotripsy.

94. On April 13, 2015, Kim underwent extracorporeal shock wave lithotripsy.

95. On April 28, 2015, Kim was discharged from St. Mary's Hospital and was transferred to the Four Corners Regional Care Center where she received nursing and rehabilitation services, including physical therapy and occupational therapy.

96. On July 14, 2015, Kim was seen at Moab Family Medicine and given diagnoses of prolonged depressive reaction and phantom limb syndrome.

97. On November 10, 2015, Kim was seen at Moab Family Medicine and given diagnoses of major depressive disorder and chronic pain syndrome.

98. As a direct and proximate result of Defendants' negligence, Kim has not been able to resume her normal life.

99. Kim has been unable to return to work.

100. Kim requires assistance with all of her activities of daily living, including showering, toileting, dressing, cooking, cleaning, writing, and driving.

101. Kim now struggles with severe depression.

102. Kim's injuries are a direct result of Defendants' negligence.

103. Defendants knew or should have known that an untreated kidney infection and undiagnosed stone was a serious medical condition that could lead to sepsis and potentially death.

104. Kim's septic shock due to obstructive uropathy that resulted in quadruple amputation could have been prevented had Kim received the required level of care from Defendants.

105. Defendants' failure to provide the minimum standard of care to Kim caused her to develop septicemia, resulting, ultimately, in the amputation of her four limbs and the severe emotional and physical damages that resulted.

## FIRST CAUSE OF ACTION
### (Negligence/Gross Negligence)

106. Plaintiff incorporates the preceding allegations as if fully set forth herein.

107. A medical provider-patient relationship existed between Kim and Defendants.

108. Defendants owed a duty to Kim to meet the standard of care in the provision of medical care to Kim.

109. Defendants had a duty to use reasonable care in, among others, the provision of health care services to Kim in accordance with the applicable standards of care required by law.

110. Drs. Alexander and Scherer owed a duty to ensure that the care provided by Georgia Russell, APRN, Cynthia Barnes, RN, and other employees of Moab Regional Hospital to patients, including Kim, met the standard of care.

111. Dr. Cole owed a duty to ensure that the care provided by Eve Maher-Young and other employees of Moab Family Medicine to patients, including Kim, met the standard of care.

112. Dr. Scherer owed a duty to ensure that the care provided by Beth Holtby and other employees of Moab Free Health Clinic to patients, including Kim, met the standard of care.

113. Proper evaluation, diagnosis, medical interventions, antibiotic regimen—including the correct dosage and time period, as well as suitable instructions—and adequate follow-up care are all required for a patient with a complex kidney infection and kidney stones.

114. Defendants had a duty to use reasonable care in evaluating Kim, obtaining imaging, providing Kim with an accurate diagnosis, prescribing her the correct interventions and medications, referring her to a specialist, and providing follow-up care.

115. With Kim's clinical presentation of multiple recurrent kidney infections, unilateral flank tenderness with hematuria, and delayed response to initial therapy for pyelonephritis, it was a breach of the standard of care to fail to proceed with renal imaging and/or urological consult.

116. Had renal imaging been ordered by Defendants, the obstructing calculus at the left ureteropelvic junction of Kim's left kidney could have been detected and appropriate interventions could have been taken.

117. Defendants had the capability of ordering and evaluating a renal imaging study.

118. Defendants had the capability of arranging a urological consult for Kim.

119. It is a breach of the standard of care to prescribe unnecessary and ineffective antibiotics to a patient that has demonstrated a history of ineffective antibiotic use.

120. It is a breach of the standard of care to prescribe an incorrect antibiotic and regimen length.

121. Pyelonephritis associated with a renal stone is a time-sensitive diagnosis that can result in significant organ and/or life-threatening illness if not detected and treated expeditiously.

122. Timely diagnosis and management of pyelonephritis associated with a renal stone has significant impact on patient outcome.

123. Kim's outcome could have been prevented if Defendants had met the standard of care.

124. Defendants breached the applicable standard of care and/or were grossly negligent by *inter alia*:

    a. Failing to provide appropriate follow-up care;

    b. Failing to proceed with renal imaging; order a CT scan, a KUB radiography, or an x-ray to detect her kidney stone;

    c. Failing to diagnose/misdiagnosing Kim's medical condition;

    d. Failing to proceed with urological consult;

    e. Prescribing Macro for five (5) days when Macro is a seven (7) day course antibiotic;

    f. Prescribing Macrobid when Kim had pyelonephritis and a kidney stone;

    g. Failing to provide appropriate emergency care;

    h. Failing to appropriately transfer Kim to a higher level of care; and

    i. Failing to ensure adequate staffing and failing to oversee, train, supervise, and assure that the staff and employees were sufficiently experienced, trained, and providing treatment meeting the standard of care.

125. As a direct and proximate result of Defendants' failure to diagnose and properly treat Kim's complicated kidney infection and 13 mm kidney stone, Kim developed staphylococcus septicemia and ultimately required quadruple amputation.

126. It is unlikely that Kim's pyelonephritis would have progressed to septic shock and multiple amputations of her extremities had her stone been detected earlier.

127. Defendants breach of the standard of care caused harm to Kim.

128. Kim returned to the emergency department as symptoms worsened as well as followed up with primary care medicine as recommended.

129. Despite seeking repeated care from multiple providers, her renal stone went undetected until she presented with urosepsis and septic shock due to obstructing ureteral stone.

130. Kim did not cause, and is not responsible for the sepsis that resulted in her amputations.

131. The expenses of medical care and treatment for Kim would not have resulted or occurred if the Defendants had not breached the standard of care and/or had not been grossly negligent.

132. As a direct and proximate result of the foregoing acts or omissions of Defendants, Kim suffered damages including, but not limited to, severe and excruciating pain and suffering; mental and emotional distress; discomfort; permanent disability; the loss of the full use of her left and right legs; the loss of the full use of her right and left arms; numerous surgical procedures and physical rehabilitation; loss of her ability to run, bike, hike, drive, cook, clean, dress herself, go to the bathroom and participate in other activities of daily living; past and future

medical expenses; loss of enjoyment of life; disfigurement; loss of income; loss of future earning capacity; and other economic loss.

## SECOND CAUSE OF ACTION
**(Vicarious Liability)**

133. Plaintiff incorporates the preceding allegations as if fully set forth herein.

134. At all relevant times, Defendants were the employers of the agents and employees whose acts and omissions as described herein caused injury to Kim Blackburn.

135. Defendants hired these employees and agents to perform work of the general kind and nature performed in the scope of Defendants' business.

136. Defendants' employees and agents were directed toward the accomplishment of Defendants' business purposes.

137. Defendants' employees and agents as described herein provided health care within the hours of their work and the ordinary spatial boundaries of their employment.

138. The acts and omissions of Defendants' employees and agents as described herein were motivated, in whole or in part, by the purpose of serving Defendants' business interests.

139. Defendants had a duty to ensure that their patients were treated with reasonable care by their actual, apparent, and ostensible agents.

140. As set forth above, Defendants' actual, apparent, and ostensible agents breached duties owed to Kim.

141. As a direct, proximate and foreseeable result of the foregoing, Defendants are liable for the actions and omissions of their actual, apparent, and ostensible agents.

## PRAYER FOR RELIEF

WHEREFORE, as a direct and proximate result of the acts and omissions of Defendants, Plaintiff was injured; and Plaintiff has incurred the following damages and is entitled to judgment in her favor against Defendants as follows, in sums to be determined at trial:

- a. Economic damages, including:
    1. Past and future medical and other expenses;
    2. Past and future lost earnings;
    3. Past and future lost household services; and
    4. Other past and future special damages.
- b. Non-economic damages, including;
    1. Past and future physical pain and suffering;
    2. Past and future loss of enjoyment of life;
    3. Past and future permanent disability; and
    4. Other past and future general damages.
- c. Costs and attorneys fees of this action;
- d. Prejudgment interest as allowed by law;
- e. Post judgment interest as allowed by law; and
- f. Such other and further relief as allowed by law and that the Court deems equitable and just.

//

//

//

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED this 5th day of February, 2018.

                                              CHRISTENSEN & JENSEN, P.C.
                                              */s/ Heather L. Thuet*
                                              Heather L. Thuet
                                              *Attorneys for Plaintiff*