## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| TONYA KIM BLACKBURN,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES; MOAB FAMILY MEDICINE; EVE MAHER-YOUNG, PA-C; and DOE INDIVIDUALS 1 through 10,<br><br>    Defendants. | **REPORT AND RECOMMENDATION TO DENY MOTION FOR LEAVE TO AMEND TO JOIN TRANSFEREES AND SHAREHOLDERS OF DEFENDANT MOAB FAMILY MEDICINE (DOC. NO. 159)**<br><br>Case No. 2:18-cv-00116-DBB-DAO<br><br>Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

On February 10, 2020, Plaintiff Tonya Kim Blackburn filed a motion seeking leave to amend her complaint to add six new parties and three new causes of action. (Mot. For Leave to Amend to Join Transferees and Shareholders of Def. ("Mot."), Doc. No. 159.)

Ms. Blackburn's operative complaint names Moab Family Medicine ("MFM"), a professional corporation, as a defendant. (Compl. ¶ 11, Doc. No. 2.) Through her proposed amendment, Ms. Blackburn now seeks to add the shareholders and transferees of MFM—Kenneth L. Williams, M.D., Jonas S. Munger, M.D., Katherine K. Williams, M.D., Nicole Priest, M.D., Dylan Cole, M.D., and Moab Valley Healthcare, Inc. ("MVHI")—as defendants because MFM dissolved when it filed articles of dissolution on April 4, 2019. (Mot. 1–2, 4, 8, Doc. No. 159; Ex. A to Mot., Suppl. Compl. ¶¶ 14–23, Doc. No. 159-1.) She also seeks to add new causes of action stemming from the sale and dissolution of MFM: namely, two causes of action under the Uniform Voidable Transactions Act of 2017, Utah Code Ann. § 25-6-101 *et. seq.*, and an additional cause of action to enforce her medical malpractice claim against the shareholders of

1

MFM under section 26-10a-1408 of the Utah Revised Business Corporation Act of 1992 ("Section 1408 claim").  (Ex. A to Mot., Suppl. Compl. ¶¶ 180–213, Doc. No. 159-1.) Defendants MFM and Eve Maher-Young oppose the motion.  They argue it is untimely, prejudicial, and futile.  (Defs.' Opp'n to Pl.'s Mot. for Leave to Amend ("Opp'n") 3, 9, Doc. No. 166.)  On June 10, 2020, the court held a hearing on the motion.  (Doc. No. 207.)

Having considered the parties' briefing and arguments at the June 10 hearing, the undersigned, for the reasons addressed below, RECOMMENDS the district judge DENY Ms. Blackburn's motion (Doc. No. 159).

## **BACKGROUND**

Ms. Blackburn alleges she suffered septic shock from an obstructive kidney stone, resulting in a quadruple amputation of her hands and feet.  (Compl. ¶¶ 1, 21, Doc. No. 2.)  She further alleges this unfortunate outcome was the result of medical malpractice by her various health care providers.  (*Id.* ¶¶ 106–132.)

Ms. Blackburn filed her complaint on February 5, 2018.  (Compl., Doc. No. 2.)  In it, she asserted a cause of action for negligence against Moab Regional Hospital and affiliated health care providers Angela Alexander, M.D., Patrick Scherer, D.O., Georgia Russell, APRN, and Cynthia Barnes, RN ("Moab Regional Defendants"); MFM and Eve Maher-Young, PA-C, a physician assistant with MFM ("MFM Defendants"); Dylan Cole, M.D., a physician with MFM; and the United States, on behalf of the Moab Free Health Clinic.  (Compl. ¶¶ 3–13, 106–132.) Ms. Blackburn asserted a second cause of action for vicarious liability.  (*Id.* ¶¶ 133–141.)

The Moab Regional Defendants were dismissed with prejudice from the case in the fall of 2018.  (Order Granting Stipulated Mot. for Dismissal of Pl.'s Compl. with Prejudice Against

Defs. (1) Angela Alexander, M.D., (2) Patrick Scherer, D.O., (3) Georgia Russell, APRN, and

(4) Cynthia Barnes, RN, Doc. No. 64; Order Granting Stipulated Mot. for Dismissal of Pl.'s

Compl. with Prejudice Against Def. Moab Regional Hospital, Doc. No. 68.)  Dr. Cole was

dismissed with prejudice on November 8, 2018.  (Order Granting Stipulated Mot. for Dismissal

of Pl.'s Compl. with Prejudice Against Def. Dylan Cole, DO, Doc. No. 73; *see* Compl. ¶ 12,

Doc. No. 2.)

Per the relevant scheduling orders in this case, August 17, 2018 was the last day to amend

pleadings or add parties.  (Third Am. Scheduling Order 3, Doc. No. 100.)  Fact discovery closed

November 14, 2019.  (*Id.*)  The parties are currently proceeding with expert discovery, which

closes on November 30, 2020.  (Fourth Am. Scheduling Order 1, Doc. No. 198.)  Dispositive

motions are due December 7, 2020.  (*Id.* at 2.)  If the case is not resolved on dispositive motions,

the court informed the parties to expect trial to be set sometime during the third quarter of 2021.

(*Id.*)

Ms. Blackburn filed the instant motion on February 10, 2020, citing two reasons for the

date of filing.  (Mot., Doc. No. 159.)  First, she claims that on October 28, 2019, she

"discovered" that MFM had dissolved on April 4, 2019, and that "MFM transferred and/or

distributed its assets in liquidation to MVHI and MFM's shareholders."  (Mot. 4–5, 8, Doc. No.

159.)  Second, she cites to the MFM Defendants' January 22, 2020 filing of Second

Supplemental Rule 26(a)(1) Initial Disclosures (Doc. No. 155-2), withdrawing a one-million-

dollar insurance policy the MFM Defendants had initially indicated might be available to satisfy

a judgment in this case.  (*See* Mot. 3, 5, 8, Doc. No. 159; *see also* Fed. R. Civ. P.

26(a)(1)(A)(iv).)

Ms. Blackburn's proposed supplemental complaint seeks to name as defendants the physician-shareholders of MFM:  Kenneth L. Williams, M.D., Jonas S. Munger, M.D., Katherine K. Williams, M.D., Nicole Priest, M.D., and Dylan Cole, M.D. ("MFM Shareholders").  (*See* Ex. A to Mot., Suppl. Compl. ¶¶ 14–23, Doc. No. 159-1.)  She also seeks to add MVHI, which purchased MFM.  (*Id.* ¶¶ 17, 121.)  With her first new proposed cause of action for voidable transfer, Ms. Blackburn alleges MFM improperly (1) transferred its assets to MVHI with the "actual intent to hinder, delay, or defraud" her; (2) transferred its assets for less than "reasonably equivalent value"; and (3) became insolvent because of the transfer or was insolvent when the transfer was made.  (*Id.* ¶¶ 183–186.)  With her second proposed cause of action for voidable transfer, Ms. Blackburn makes the same allegations against the MFM Shareholders.  (*Id.* ¶¶ 194–197.)  With her proposed cause of action under Section 1408, Ms. Blackburn claims any assets distributed from MFM to the MFM Shareholders after the dissolution should be held in a "constructive trust" to satisfy any judgment she might obtain in this case.  (*Id.* ¶¶ 203–213.)

## DISCUSSION

## I.   LEAVE TO MODIFY THE SCHEDULING ORDER UNDER RULE 16(b)(4)

Ms. Blackburn seeks leave to amend her complaint well outside the timeframe to do so under the operative scheduling order.  Ms. Blackburn filed her motion for leave to amend on February 10, 2020, more than seventeen months after the August 17, 2018 deadline to file motions to amend pleadings and add parties.  (Third Am. Scheduling Order 3, Doc. No. 100.)  Despite the substantial gap between the expiration of the deadline to move to amend and add parties and the filing of her motion, Ms. Blackburn's motion neither acknowledges the deadline to amend or add parties has long expired, nor addresses the threshold standard applicable to her

4

request.  Tenth Circuit precedent requires a party seeking to amend after the deadline in the

operative scheduling order to demonstrate both "(1) good cause for seeking modification [of the

scheduling order] under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard."

*Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

Thus, the court first considers whether Ms. Blackburn has demonstrated good cause to modify

the scheduling order in this case.

Rule 16(b)(4) states "[a] schedule may be modified only for good cause and with the

judge's consent."  Fed. R. Civ. P. 16(b)(4).  The Tenth Circuit interprets Rule 16 to require a

showing that the "scheduling deadlines cannot be met despite [the movant's] diligent efforts."

*Gorsuch*, 771 F.3d at 1240 (alteration in original) (internal quotation omitted).  A district court's

refusal to modify a scheduling order falls within its discretion, and the court of appeals reviews it

only for abuse of discretion.  *Id.*  A movant can satisfy this good cause requirement if, for

example, it "learns new information through discovery or if the underlying law has changed."

*Id.*  However, if a party "knew of the underlying conduct but simply failed to raise [its] claims"

earlier, it cannot establish "good cause" under Rule 16.  *Id.*  The moving party must show good

cause both for failing to move to amend prior to the cutoff date and for the length of time

between learning of the new information warranting amendment and moving to amend.  *Birch v.

Polaris Indus.*, 812 F.3d 1238, 1248 (10th Cir. 2015).

Ms. Blackburn's proposed amendment relates directly to the sale and dissolution of

MFM.  In her reply, Ms. Blackburn argues good cause exists to allow the proposed amendment

at this time for the following reasons: (1) she could not have moved to amend her complaint to

include the proposed claims against the MFM Shareholders by the August 2018 deadline since

MFM did not dissolve until the articles of dissolution were filed on April 4, 2019;[1] (2) she could not have moved to amend her complaint by the August 2018 deadline to include her voidable transfer claims because she first learned about a transfer of assets to shareholders during the October 28, 2019 deposition of Dr. Munger; and (3) she did not learn until December 2019 discussions with opposing counsel and the MFM Defendants' January 22, 2020 filing of their Second Supplemental Rule 26(a)(1) Initial Disclosures that an insurance policy the MFM Defendants had previously indicated might satisfy any judgment in this case did not apply given Dr. Cole's November 2018 dismissal from this case.  (*See* Reply in Supp. of Mot. for Leave to Am. ("Reply") 2–5, Doc. No. 184.)

      The court agrees it was not feasible for Ms. Blackburn to seek to amend her complaint to add the claims and parties at issue before the August 17, 2018 deadline to amend pleadings. MFM's articles of dissolution indicate MFM's dissolution was authorized on January 1, 2017; however, the articles were not filed until April 4, 2019.  (Ex. L to Mot., Articles of Dissolution, Doc. No. 159-12); *see also* Utah Code Ann. § 16-10a-1403(2) ("A corporation is dissolved upon the effective date of its articles of dissolution.").  Further, the MFM Defendants do not set forth any facts indicating Ms. Blackburn knew about the sale of MFM before August 17, 2018; instead, they argue Ms. Blackburn knew about MFM's sale at least as of September 2018.  (*See* Opp'n 7, Doc. No. 166 ("Plaintiff was aware that MFM had been sold to MVHI as early as September 2018.")).  While good cause exists for Ms. Blackburn's failure to move to amend

---

[1] Ms. Blackburn claims MFM was required to notify her of the dissolution pursuant to Utah Code section 16-10a-1406.  (Reply 2, Doc. No. 184.)  This section, however, does not require notification.  Instead, it provides that "[a] dissolved corporation electing to dispose of known claims pursuant to this section may give written notice of the dissolution to known claimants at any time after the effective date of the dissolution."  Utah Code Ann. § 16-10a-1406(2).

prior to the cutoff date, a party seeking leave to amend after the deadline must also show good cause for the length of time between learning of the new information warranting amendment and moving to amend.  *See Birch*, 812 F.3d at 1248.  Thus, the court examines when Ms. Blackburn knew, or should have known, about the information giving rise to her new proposed claims.

The MFM Defendants argue Ms. Blackburn knew about the sale at the time her counsel deposed Dr. Cole on September 28, 2018.  (Opp'n 7–8, Doc. No. 166.)  Ms. Blackburn asserts, however, that she only learned at this deposition that MFM had merged with Moab Regional Hospital on January 1, 2017.  (Reply 7, Doc. No. 184.)  At Dr. Cole's deposition, Ms. Blackburn's counsel asked a question indicating she knew the structure of MFM had changed. In response to her questioning, Dr. Cole said MFM had "[m]erged with the hospital" in January 2017.  (*See* Ex. 2 to Opp'n, 9/28/18 Dep. of Dylan Cole, D.O. at 13:4–11, Doc. No. 166-2 ("Q All right.  And are they still currently employed at Moab Family Medicine?  A Yes, although our structure, the clinic structure has changed.  Q And just so it's clear, the structure has changed in that Moab Family Medicine has been subsumed within the hospital, correct?  A Merged with the hospital."); 14:21–15:13 ("Q And do you know when that change or the merger occurred?  A The merger occurred January 1 of 2016. . . .  A I'm sorry.  Was that one of 2017? . . .  It was '17, excuse me.  I misspoke.").)  Although a merger was clearly referenced, Dr. Cole never mentioned a sale, nor did Ms. Blackburn's counsel.  Further, at the June 10, 2020 hearing, Ms. Blackburn's counsel indicated that after this deposition she checked the status of MFM and found it to be an ongoing corporate entity.  On this record, the court finds Ms. Blackburn did not have reason to know in September 2018 that MFM had been sold in January 2017.

The MFM Defendants also point to the July 15, 2019 deposition of Dr. Katherine Williams, arguing that it demonstrates Ms. Blackburn knew about the sale of MFM as of that time.  (Opp'n 7–8, Doc. No. 166.)  Ms. Blackburn claims that during this deposition she "learned that the transaction that Dr. Cole had characterized as a merger was more akin to a sale," but did not reveal "that the merger resulted in distributions to MFM's shareholders."  (Reply 7, Doc. No. 184.)  Ms. Blackburn claims she only learned about the distribution to shareholders during Dr. Munger's October 28, 2019 deposition.  (*Id.*)  But the transcript of Dr. Williams' July 15, 2019 deposition shows Ms. Blackburn knew, as of the date of the deposition, that MFM had been sold in 2017.  In fact, Ms. Blackburn's counsel specifically acknowledged as much in her questioning.  (*See* Ex. 3 to Opp'n, 7/15/19 Dep. of Katherine Williams, M.D. at 15:20–16:4, Doc. No. 166-3 ("Q Okay.  And then did Moab Family Medicine sell its entity?  A Yes.  Q And who did it sell its entity to?  A Moab Regional Hospital.  Q And that sale would have occurred in approximately end of 2017?  A I think the end of -- what year is this, 2019?  End of 2016.  Q Okay.").)

Based on the questions of Ms. Blackburn's counsel and the answers of Dr. Williams, the court finds that at least as of July 15, 2019, Ms. Blackburn knew MFM had been sold and not just merged with another entity.  Further, by this time, MFM had publicly filed its articles of dissolution, formally dissolving the entity.  (Ex. L to Mot., Doc. No. 159-12.)  By its nature, the sale of a corporation suggests a transfer of funds to the purchaser and a distribution of any sale proceeds to the owners of the sold company.  Despite this, Ms. Blackburn sought no discovery to determine if the known sale of MFM in fact resulted in a transfer of funds and distribution to shareholders, or how it would otherwise impact her case.  She could easily have sought discovery on these issues since she knew about the sale at least four months before the

November 14, 2019 fact discovery deadline.  And she could have even more easily checked MFM's corporate status in public filings, as she did after Dr. Cole's September 2018 deposition. With this simple act, she would have found the articles of dissolution that were publicly filed in April 2019.  The sale of MFM, the likely transfer of funds and distribution of sale proceeds, and the dissolution of MFM—facts Ms. Blackburn either knew, should have known, or could have obtained through discovery after the July 15, 2019 deposition[2]—form the factual underpinnings of her voidable transfer and Section 1408 claims.  (See Ex. A to Mot., Suppl. Compl. ¶ 182, Doc. No. 159-1 ("Shortly after Plaintiff's claims against Moab Family Medicine arose, Moab Family Medicine transferred assets to MVHI."); id. ¶ 192 (alleging a transfer of assets from MFM to the MFM Shareholders); id. ¶ 206 ("[F]ollowing the January 1, 2017 authorization of dissolution, Moab Family Medicine made distributions to the" MFM Shareholders.).)  Yet, Ms. Blackburn did not file her motion for leave to amend until February 10, 2020, almost seven months after the July 15, 2019 deposition demonstrating she knew MFM had been sold.

The timing of Ms. Blackburn's motion appears most closely related to the MFM Defendants' January 22, 2020 Second Supplemental Rule 26(a)(1) Initial Disclosures (Doc. No. 155-2) withdrawing a potentially applicable insurance policy, thereby reducing the amount of insurance coverage available to satisfy a judgment from two million to one million

_____

[2] Ms. Blackburn claims counsel prevented her from asking any follow-up questions on the distribution during Dr. Munger's October 28, 2019 deposition.  (Reply 7–8, Doc. No. 184.)  Ms. Blackburn could have moved to compel this testimony or sought additional time to serve written discovery on this issue.  (See Third Am. Scheduling Order 3, Doc. No. 100 (setting October 17, 2019 as the deadline to serve written discovery)).  In any event, Ms. Blackburn knew about the sale of MFM no later than July 15, 2019 and could have sought discovery concerning the sale well before the November 14, 2019 close of fact discovery.

9

dollars.  (Reply 3–5, 7, Doc. No. 184.)  In fact, Ms. Blackburn explicitly states in her reply that she "seeks leave to amend, not because she recently learned about new assets, but because she recently has been told that there was $1 million in insurance coverage, not $2 million."  (*Id.* at 7.)

Ms. Blackburn claims the MFM Defendants failed to comply with their initial disclosure obligations, and implies that had they done so, she could have sought leave to amend earlier in the case.  (Reply 3–5, Doc. No. 184.)  On May 25, 2018, the MFM defendants provided two certificates of insurance in their initial disclosures for policies UT200074 and UT920029.  (Ex. F. to Mot., Defs. Moab Family Medicine, Dylan Cole, D.O. and Eve Maher-Young, PA-C, Rule 26(a)(1) Initial Disclosures 12–13, Doc. No. 159-6.)  During a December 13, 2019 meet and confer, counsel for the MFM Defendants informed Ms. Blackburn's counsel of the possibility that one of the "policies of insurance indicated in May 2018 is no longer applicable" because of the November 18, 2018 dismissal of Dr. Cole from the case.  (Ex. G to Pl.'s Short Form Discovery Mot. re Moab Family Medicine and Eve Maher-Young's Failure to Disclose All Ins. Agreements ("Short Form Discovery Mot."), 12/13/19 Email from Heather Thuet to Brandon Hobbs, Doc. No. 153-7.)  After Ms. Blackburn filed a short form discovery motion on the issue, the MFM Defendants supplemented their initial disclosures, withdrawing the UT920029 policy, on January 22, 2020.  (*See* Ex. 2 to Opp'n to Short Form Discovery Mot., Defs. Moab Family Medicine, Eve Maher-Young, PA-C's Second Suppl. Rule 26(a)(1) Initial Disclosures 9, Doc. 155-2.)

Ms. Blackburn claims that had the MFM Defendants met their disclosure and supplementation obligations under Rule 26(a)(1)(A)(iv), she would have known "no later than November 2018" that there was only one million dollars in insurance coverage because the

UT920029 policy was tied directly to Dr. Cole, who was dismissed from the case.  (Reply 5, Doc. No. 184; Order Granting Stipulated Mot. for Dismissal of Pl.'s Compl. with Prejudice Against Def. Dylan Cole, DO, Doc. No. 73.)  As she points out, there is a "drastic difference" in a case with one million dollars in insurance coverage versus two million dollars in coverage. (Reply 5, Doc. No. 184.)

While it is certainly true that available insurance coverage changes a case, Ms. Blackburn cites no authority showing the supplementation of disclosures concerning insurance agreements that "may satisfy all or part of a possible judgment," as required under Rule 26(a)(1)(A)(iv), justifies the filing of a motion for leave to amend at this stage of the case.  Importantly, the scope of coverage bears no relation to the causes of action or parties Ms. Blackburn seeks to add to the complaint.  Even if MFM were underinsured at the time the claim was made or the underlying incident occurred, these facts are unrelated to the questions of when Ms. Blackburn knew about the sale of MFM and should have known about any related transfer of funds and distribution of assets, which are the critical facts underlying her Section 1408 and voidable transfer claims.  The timing of the supplemental disclosure regarding the withdrawn insurance policy does not provide sufficient justification for filing a motion for leave to amend in February 2020.

*** 

Ms. Blackburn did not seek leave to amend her complaint to add the six new defendants and three new causes of action tied to the sale of MFM until February 10, 2020—almost seven months after she definitively knew MFM had been sold.  Given her delay in filing the instant motion even after she learned of the sale of MFM, and her lack of diligence in pursuing additional facts about the MFM sale and any possible transfers and distributions associated with

the sale, Ms. Blackburn has failed to demonstrate good cause for modifying the scheduling order

to permit her to seek leave to amend her complaint at this time.  *See Birch*, 812 F.3d at 1248

(finding the district court did not abuse its discretion in denying leave to amend where movant

failed to provide an adequate explanation for waiting four months after learning new facts

forming the basis for the proposed amendment to file its motion to amend).  Consequently, the

undersigned RECOMMENDS the district judge DENY Ms. Blackburn's motion for failure to

meet the good cause standard necessary to modify the schedule in this case pursuant to Federal

Rule of Civil Procedure 16(b)(4).

## II.   LEAVE TO AMEND UNDER RULE 15(a)(2)

Ms. Blackburn's failure to establish good cause to amend her complaint after the

scheduling order deadline to amend suffices to deny her motion.  *See, e.g., Gorsuch*, 771 F.3d at

1242 ("Having concluded [movants] lacked good cause to amend their pleadings after the

scheduling order deadline, we need not reach the Rule 15(a) issue, and decline to do so.").

However, as addressed below, Ms. Blackburn's proposed amendment also fails to satisfy the

Rule 15 standard, providing an independent basis to deny her motion.

As a threshold matter, the court addresses the correct procedural rule under which to

consider Ms. Blackburn's motion for leave to amend.  Ms. Blackburn cites both Rule 15(a) and

Rule 15(d) in support of her motion.  (*See* Mot. 1, 5, 7, Doc. No. 159.)  Rule 15(d) provides that

"the court may, on just terms, permit a party to serve a supplemental pleading setting out a

transaction, occurrence, or event that happened *after* the date of the pleading to be

supplemented."  Fed. R. Civ. P. 15(d) (emphasis added).  Supplemental pleadings are "distinct

from amendments to pleadings under Rule 15, which 'relate to matters that occurred prior to the

12

filing of the original pleading.'" *Carter v. Bigelow*, 787 F.3d 1269, 1278 (10th Cir. 2015)

(quoting 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1504 (3d

ed. 2014)).  In general, "the standard used by courts in deciding to grant or deny leave to

supplement is the same standard used in deciding whether to grant or deny leave to amend." *Id.*

at 1278 n.6 (internal quotation omitted).  Although Ms. Blackburn learned of the sale of MFM

after filing her complaint on February 5, 2018, the sale of MFM occurred on or around January

1, 2017.  (Ex. L to Mot., Articles of Dissolution, Doc. No. 159-12; *see also* Compl., Doc. No. 2.)

Given these facts, the more appropriate procedural vehicle is Rule 15(a) rather than Rule 15(d).

The parties appear to agree and cite the Rule 15(a) standard repeatedly in their briefing.  (*See*

Mot. 7, Doc. No. 159 (citing Rule 15(a) of the Federal Rules of Civil Procedure); Opp'n 9, Doc.

No. 166 (same).)  Because Ms. Blackburn's proposed causes of action are based on facts that

occurred before her complaint was filed, the court considers Ms. Blackburn's motion under Rule

15(a)(2) of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 15(a)(2) provides that once the deadline for amending a

pleading as a matter of course has passed, "a party may amend its pleading only with the

opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  District courts

"should freely give leave [to amend] when justice so requires." *Id.*  Leave to amend should be

denied "only for reasons such as 'undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the]

amendment.'" *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166

(10th Cir. 2009) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  A

district court's decision to deny leave to amend under Rule 15 falls within its discretion, and the court of appeals will review it only for abuse of discretion.  *Id.*

The MFM Defendants argue leave to amend should be denied because of the prejudice the remaining defendants would suffer if Ms. Blackburn is permitted to amend her complaint at this stage of the case, Ms. Blackburn's undue delay in seeking the amendment, and the futility of the amendment.  (Opp'n 3–4, 9, Doc. No. 166.)   The court addresses each argument in turn.

## A.  Undue Prejudice

The "most important[] factor in deciding a motion to amend the pleadings[] is whether the amendment would prejudice the nonmoving party."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006).  Prejudice typically occurs "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."  *Id.* at 1208.  "A need to reopen discovery[] [or] a delay in proceedings . . . are indicators of prejudice."  *US Magnesium, LLC v. ATI Titanium LLC*, No. 2:17-cv-00923-HCN-PMW, 2020 U.S. Dist. LEXIS 90609, at *6 (D. Utah May 22, 2020) (unpublished).  Further, "prejudice to the non-moving party" should be balanced against "any harm to the movant if leave is not granted," and questions of judicial economy should also be considered.  3 Moore's Federal Practice - Civil § 15.15 (2020); *see also Bell v. Allstate Life Ins. Co.,* 160 F.3d 452, 454 (8th Cir. 1998) ("Any prejudice to the nonmovant must be weighed against the prejudice to the moving party by not allowing the amendment").

Ms. Blackburn argues no prejudice would result if she is permitted to amend her complaint.  Specifically, she claims additional discovery would be minimal and she could complete the required discovery "well before a trial date."  (Reply 5, Doc. No. 184.)  While she

concedes the necessity of propounding "discovery in support of her new claims," she contends the MFM Shareholders would not need to propound additional discovery because they were parties to the sale of the practice.  (*Id.*)   The MFM Defendants argue, however, that prejudice to all defendants would result from the amendment.  (Opp'n 9, Doc. No. 166.)  Specifically, they claim the amendment "would necessarily reopen fact discovery" and would delay the trial for another year.  (*Id.*)  They further argue the MFM Shareholders would suffer prejudice in facing claims that were not brought against them as health care practitioners under the Utah Health Care Malpractice Act of 2008, Utah Code Ann. § 78B-3-401.  (*Id.*)

As an initial matter, the court notes the prejudice the MFM Shareholders would suffer if added to the case is not a relevant consideration in determining the existence of undue prejudice. Any new party would necessarily suffer prejudice simply by being added to a case.  The relevant consideration in determining undue prejudice if the amendment is permitted is the resulting harm to the current, nonmoving parties.  Further, even if the prejudice the MFM Shareholders would suffer were a relevant consideration, the court rejects the premise of the MFM Defendants' argument.  The Utah Health Care Malpractice Act "only applies to malpractice actions against health care providers," *Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 30, 70 P.3d 904, which are defined as "any action against a health care provider . . . based upon alleged personal injuries relating to or arising out of health care rendered or which should have been rendered by the health care provider."  Utah Code Ann. § 78B-3-403(17).  While the MFM Shareholders are physicians, Ms. Blackburn's voidable transfer claims and Section 1408 claim are asserted against them in their capacity as owners, shareholders, and directors of MFM, not as healthcare providers.  (*See* Ex. A to Mot., Suppl. Compl. ¶¶ 14–23, Doc. No. 159-1.)

15

As to the current defendants, the court finds undue prejudice will result if the amendment is permitted.  First, the proposed new claims for fraudulent transfer arise out of a completely different subject matter than the claims in the operative complaint.  The medical malpractice claims asserted in Ms. Blackburn's operative complaint are entirely separate and distinct from the voidable transfer and Section 1408 claims she seeks to add through her amendment.  The malpractice claims concern the care Ms. Blackburn received from her various medical providers while the voidable transfer and Section 1408 claims implicate the circumstances surrounding the sale and dissolution of MFM, and the distribution of proceeds to the MFM Shareholders.  *See Minter*, 451 F.3d at 1207 (indicating prejudice typically occurs "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues").

Second, the significant discovery required by the addition of six new parties and three new causes of action—and the concomitant delay to this case—would unduly prejudice the remaining defendants.  As an initial matter, discovery closed on November 14, 2019 and the parties are now proceeding with expert discovery, which closes on November 30, 2020.  The proposed amendment would require the court to reopen fact discovery, extend the time necessary to conduct expert discovery, reset the dispositive motion deadline, and further delay trial.  *See U.S. Magnesium, LLC*, 2020 U.S. Dist. LEXIS 90609, at *6 ("A need to reopen discovery[] [or] a delay in proceedings . . . are indicators of prejudice.").

Moreover, the new voidable transfer and Section 1408 claims would require a significant amount of discovery.  Discovery would be needed concerning MFM's articles of incorporation and other organizational documents, any agreements relating to the sale of MFM, and the

16

distributions made to the MFM Shareholders from the sale.  Discovery into the MFM

Shareholders' motivations for the sale also would be required given that Ms. Blackburn alleges

the transfers were made "with the actual intent to hinder, delay, and defraud" her.  (*See* Ex. A. to

Mot., Suppl. Compl. ¶ 194, Doc. No. 159-1.)  Discovery regarding MFM's financial health is

likewise relevant because Ms. Blackburn alleges MFM either was insolvent or became insolvent

upon transfer.  (*Id.* ¶ 196.)  Accordingly, the new claims would necessitate significant written

discovery and document production, as well as the depositions of the MFM Shareholders, many

of whom were deposed on other topics during fact discovery.  (*See* Mot. 4, Doc. No. 159.)

Further, expert discovery on the valuation of MFM would be required to determine if the sale of

MFM was for "reasonably equivalent value."  *See* Utah Code Ann. § 25-6-202(1)(b).  This

discovery would significantly delay resolution of this case and burden the nonmoving defendants

who would be required to participate in this discovery, at least to some extent, to protect their

rights.

   Further, it is significant that Ms. Blackburn will suffer little harm if leave to amend is

denied.  *See Bell,* 160 F.3d at 454 ("Any prejudice to the nonmovant must be weighed against the

prejudice to the moving party by not allowing the amendment").  Both Ms. Blackburn and the

MFM Defendants agree that Ms. Blackburn can pursue a separate action against the MFM

Shareholders and MVHI if she obtains a judgment for more than applicable insurance limits.

(*See* Reply 6, Doc. No. 184 ("[I]f the Court does not permit leave to amend, Ms. Blackburn

would have the right to bring her new claims in a new action . . . ."); Opp'n 14, Doc. No. 166

("[I]f the judgment exceeds the available insurance coverage, only then plaintiff may pursue a

civil action against the shareholders to enforce this judgment against the dissolved

corporation").)  Because Ms. Blackburn can pursue her voidable transfer and Section 1408 claims later if necessary, she would suffer little harm if the motion to amend is denied.  This lack of harm contrasts with the undue prejudice the nonmoving defendants would suffer if fact discovery is reopened on causes of action unrelated to the underlying medical malpractice claim and resolution of this case is further delayed.

Finally, while judicial economy typically favors the resolution of claims in a single proceeding, this is not so in this case.  In fact, depending on the outcome of the case as it currently stands, the proposed claims might never need to be asserted or any discovery conducted on them.  The voidable transfer and Section 1408 claims both presuppose Ms. Blackburn will prevail on her claims against the MFM Defendants and that she will recover an amount in excess of the one million dollars in applicable insurance coverage.  But if the MFM Defendants prevail on the medical malpractice claims or the amount awarded to Ms. Blackburn does not exceed the available insurance limit, these new claims would be unnecessary, and any discovery conducted with respect to them, wasteful.

In sum, the undue prejudice that would result from reopening and conducting fact discovery on causes of action unrelated to those in the operative complaint is significant and would unduly prejudice the remaining defendants.  Moreover, Ms. Blackburn would suffer little harm if leave to amend is denied since, as she admits, she can assert her proposed voidable transfer and Section 1408 claims in a later proceeding, if necessary.  Judicial economy also favors denial of leave to amend since Ms. Blackburn's proposed claims might ultimately prove unnecessary if she either fails to prevail in this case or fails to recover more than the available insurance coverage.  For these reasons, the undersigned RECOMMENDS the district judge

DENY Ms. Blackburn's motion to amend because of the undue prejudice that would result if the amendment were allowed.

### B.  Undue Delay

 "[U]ntimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993) (internal citations omitted).  The pertinent inquiry is the amount of time between uncovering the facts on which the amendment is based and the time of filing.  *See Leatherwood v. Rios*, 705 F. App'x 735, 740 (10th Cir. 2017) (unpublished) ("Leave to amend may also be denied for undue delay when the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.").

As discussed at length above, Ms. Blackburn has not provided an adequate explanation for her delay in seeking leave to amend her complaint after learning of the sale of MFM.  Ms. Blackburn knew about the sale of MFM no later than July 15, 2019.  Yet she took no steps to discover additional information concerning the sale and any potential transfers and distributions after that time, failing to even check the corporate status of MFM—and she did not seek leave to amend her complaint to add the six new defendants and three new causes of action tied to the sale of MFM until February 22, 2020.  Thus, for the same reasons set forth in Section I, *supra*, the undersigned RECOMMENDS the district judge DENY Ms. Blackburn's motion because of her undue delay in seeking leave to amend her complaint.

### C.  Futility of Proposed Amendments

While undue prejudice and untimeliness are sufficient grounds on which to deny leave to amend, the court also considers the MFM Defendants' argument that each proposed cause of

action is futile.  In evaluating futility, "'[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal.'"  *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006) (quoting *Bradley v. J.E. Val–Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)).  A "'futility objection should not turn into a mini-trial or summary judgment proceeding, without the safeguards normally present for maturation and merits-based resolution of claims.'"  *Georgelas v. Call*, No. 2:16-cv-00511-RJS-PMW, 2020 U.S. Dist. LEXIS 75400, at *6 (D. Utah Apr. 28, 2020) (unpublished) (quoting *Clearone Commc'ns, Inc. v. Chiang*, No. 2:07-cv-00037-TC, 2007 U.S. Dist. LEXIS 66081, at *1 (D. Utah Sept. 5, 2007) (unpublished)).  In determining whether proposed claims are subject to dismissal, "the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable" to Ms. Blackburn.  *Probert v. Clorox Co.*, 258 F.R.D. 491, 494 (D. Utah 2009).  To avoid dismissal, a complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'"  *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678(2009)).

    1.  <u>Voidable Transfer Claims (Proposed Third and Fourth Causes of Action)</u>

The MFM Defendants argue Ms. Blackburn's third cause of action for voidable transfer against MVHI and fourth cause of action for voidable transfer against the MFM Shareholders fail to state a claim upon which relief can be granted and are, consequently, futile under Rule 15(a). (Opp'n 14, Doc. No. 166.)  They argue that because both voidable transfer claims constitute "a formulaic recitation of the elements of a cause of action," they are not entitled to a presumption

of truth.  (Opp'n 14–15, Doc. No. 166.)  Ms. Blackburn responds that the size of her medical

malpractice claim in comparison to the sale price of MFM is sufficient to support her voidable

transfer claims at the pleading stage.  (Reply 12–13, Doc. No. 184.)

Ms. Blackburn's proposed third cause of action asserts that MFM transferred its assets to

MVHI.  (Ex. A to Mot., Suppl. Compl. ¶ 182, Doc. No. 159-1.)  She alleges this transfer was

made with the "actual intent to hinder, delay or defraud Plaintiff."  (*Id.* ¶ 183.)  She also argues

MFM did not "receive a reasonably equivalent value in exchange for the transfer."  (*Id.* ¶ 185.)

She alleges that at the time of the transfer, or because of the transfer, MFM "was or became

insolvent."  (*Id.* ¶ 186.)  She seeks avoidance of the transfer to satisfy her claim against MFM.

(*Id.* ¶ 189.)  Ms. Blackburn makes nearly identical allegations against the MFM Shareholders in

her fourth cause of action.  (*Id.* ¶¶ 192–197.)  She also alleges the MFM Shareholders knew

about Ms. Blackburn's claim against MFM.  (*Id.* ¶ 198.)

Ms. Blackburn does not allege many facts in her proposed third and fourth causes of

action, but she does allege facts in support of these claims elsewhere in her proposed complaint

sufficient to withstand the MFM Defendant's allegations of futility.  *See Probert*, 258 F.R.D. at

494 (stating that the court should "look for plausibility" in the pleading in considering whether

the proposed claim is futile).  As relevant to these causes of action, Ms. Blackburn alleges MFM

was sold to MVHI for $100,000 to $500,000 (Ex. A to Mot., Suppl. Compl. ¶ 121, Doc. No. 159-

1); that this sale price was "unreasonably small in relation to the assets given up in the transfer"

(*id.* ¶ 188); and that the sale price for MFM was "distributed to each shareholder" of MFM "after

January 1, 2017."  (*Id.* ¶ 125.)  Ms. Blackburn claims economic damages of $6.2 million in

addition to $450,000 in non-economic damages.  (Reply 12 n.45, Doc. No. 184.)  Details about

Ms. Blackburn's medical treatment, amputations, and inability to return to work or normal activities are asserted in the supplemental complaint in support of these numbers.  (Ex. A to Mot., Suppl. Compl. ¶¶ 45–48, 94, 96, 99–112, Doc. No. 159-1.)  In this way, Ms. Blackburn has alleged sufficient facts to state a claim for voidable transfer against MVHI and the MFM Shareholders.

2.   Section 1408 Claim Against the MFM Shareholders (Proposed Fifth Cause of Action)

The MFM Defendants argue Ms. Blackburn's Section 1408 claim is futile until she obtains a judgment in "excess of available insurance coverage."  (Opp'n 13, Doc. No. 166.)  In essence, the MFM Defendants argue the Section 1408 claim is not ripe until Ms. Blackburn is a creditor of MFM.  (*Id.*)

Utah Code section 16-10a-1408 provides that "[a] claim may be enforced . . . against a shareholder of the dissolved corporation, if the assets have been distributed in liquidation; but the shareholder's total liability for all claims . . . may not exceed the total value of assets distributed to him, as that value is determined at the time of distribution."  Utah Code Ann. § 16-10a-1408(2).  Section 16-10a-1407 defines "claim" as "any claim, including claims of this state, whether known, due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, or otherwise."  *Id.* § 16-10a-1407(4)(a).

The MFM Defendants base their futility argument on the incorrect assertion that the Utah Revised Business Corporations Act does not define "claim."  (Opp'n 14, Doc. No. 166.)  Under the plain language of 1407(4)(a), a claim is not limited to a finalized judgment as it includes claims "due or to become due," "contingent," or founded in legal theories including tort and contract.  Utah Code Ann. § 16-10a-1407(4)(a).  Instead of relying on the definition of "claim"

found in the statute, the MFM Defendants rely on cases interpreting the statute where the procedural posture is such that a corporation's post-judgment creditors have sought to obtain the assets of a dissolved corporation from distributions made to its shareholders.  (*See* Opp'n 14, Doc. No. 166 (citing *In re Cameron,* No. ADV 11-2297, 2011 WL 2118994, at *3 (Bankr. D. Utah May 27, 2011) (unpublished); *In re Maloney*, No. 09-20450, 2010 WL 5069865, at *8 n.44 (Bankr. D. Utah Dec. 7, 2010) (unpublished); *Brigham Young Univ. v. Tremco Consultants, Inc.*, 2007 UT 17, ¶¶ 46–47, 156 P.3d 782, 791).)  This limited interpretation runs counter to the plain language of the statutory definition of "claim."  *See* Utah Code Ann. § 16-10a-1407(4)(a). Consequently, Ms. Blackburn's proposed Section 1408 claim cannot be deemed futile.

## III.   DISCRETIONARY JOINDER OF MFM SHAREHOLDERS AND MVHI UNDER RULE 25(c)

Ms. Blackburn argues with little analysis that Rule 25(c) of the Federal Rules of Civil Procedure requires the joinder of the MFM Shareholders and MVHI because MFM has been dissolved.  (Mot. 7–8, Doc. No. 159.)[3]  She also argues the addition of the MFM Shareholders and MVHI is proper under Rule 25 because of the late disclosure that MFM only has one million dollars in insurance coverage, and the fact that the individuals and entities sought to be joined have been on notice of this case.  (Mot. 8, Doc. No. 159.)  The MFM Defendants respond that there is no obligatory substitution or joinder under Rule 25(c) and that distributions to shareholders do not constitute a transfer of interest contemplated under Rule 25(c).  (Opp'n 11–

---

[3] Ms. Blackburn argues that Rule 25 of the Federal Rules of Civil Procedure, when read in conjunction with Rule 17, limits the court's discretion in allowing leave to amend, to whether the action should continue against the "original party." (Mot. 7–8, Doc. No. 159.)  While she references Rule 17 of the Federal Rules of Civil Procedure in her argument, Ms. Blackburn explicitly moves the court to add the MFM Shareholders and MVHI as parties under Rule 25(c). (*Id.* at 8 n. 25.)  Consequently, the court's analysis is limited to the same.

12, Doc. No. 166.)  The MFM Defendants also argue Ms. Blackburn violated the requirements of

Rule 25(c) by failing to serve the MFM Shareholders and MVHI.  (*Id.* at 12–13.)  As addressed

below, the court finds that joinder of the MFM Shareholders and MVHI in this case under Rule

25(c) is neither required nor warranted.

      Rule 25(c) provides that "[i]f an interest is transferred, the action *may* be continued by or

against the original party unless the court, on motion, orders the transferee to be substituted in

the action or joined with the original party."  Fed. R. Civ. P. 25(c) (emphasis added).  "The rule

presupposes that the substituted person was a party to the pending action but no longer maintains

the same interest in the outcome as a substituting party. . . .  Underlying the rule is the desire to

preserve the adjudication for the real party in interest in the matter."  *Sheedy v. BSB Props., LC*,

No. 2:13-cv-290-JNP, 2016 U.S. Dist. LEXIS 178434, at *1 (D. Utah Jan. 27, 2016)

(unpublished) (internal quotations omitted).  Rule 25(c) does not mandate substitution when an

interest has transferred; it provides that the action "may be continued . . . against the original

party."  Fed. R. Civ. P. 25(c); *see also Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d

69, 71 (3d Cir. 1993) ("Rule 25(c) does not require anything be done after the interest has been

transferred."  (internal quotation omitted)).

      In determining whether the court should exercise its discretion to add the MFM

Shareholders and MVHI pursuant to Rule 25(c), the court considers three preliminary questions:

first, whether the case can proceed against MFM as a dissolved entity; second, whether the sale

of MFM constitutes a transfer contemplated under Rule 25(c); and, third, whether lack of service

on the MFM Shareholders and MVHI warrants denial of Ms. Blackburn's request.

    **A.  Proceeding Against MFM as a Dissolved Entity**

As a threshold matter, the court finds the case can proceed against MFM as a dissolved corporation under Utah law.  Section 16-10a-1407(5) of the Utah Revised Business Corporation Act provides a seven-year statute of limitations for claims against dissolved corporations.[4]  Utah Code Ann. § 16-10a-1407(5).  Section 16-10a-1408(1) provides that a claim may be enforced against a dissolved corporation to the "extent of its undistributed assets."  *Id.* § 16-10a-1408(1).  Although the extent and nature of the distribution of MFM's assets is at the core of the motion to amend, Ms. Blackburn and the MFM Defendants agree that at least some insurance coverage exists as an undistributed asset covering the MFM Defendants.  (*See* Mot. 3, Doc. No. 159; Defs.' Response to Pl.'s DUCivR 7-1(b)(4) Suppl. Authority 2, Doc. No. 209.)  For this reason, Ms. Blackburn's case can proceed against MFM even as a dissolved entity.

### B.  Whether the Sale of MFM Is a Transfer Contemplated under Rule 25(c)

The second critical question is whether the sale of MFM constitutes a transfer of interest contemplated under Rule 25(c).  With respect to the MFM Shareholders, Ms. Blackburn cites no case law for the proposition that a transfer of interest has occurred when shareholders received a distribution through a sale.  (Opp'n 11, Doc. No. 166.)  To proceed against shareholders of a corporation for a distribution of assets upon a corporation's sale is a very different proposition than proceeding against a corporate successor to a sale, given that it disregards the corporate form.

---

[4] Utah Code section 16-10a-1407(5) provides that the applicable statute of limitations may be shorter if a dissolved entity complies with the notice provisions of Utah Code section 16-10a-1406 or if another "statute limiting actions" applies.  Utah Code Ann. § 16-10a-1407(5).  Neither scenario appears to apply here.

The general rule of successor liability is that "'where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor.'" *R.J. Enstrom Corp. v. Interceptor Corp.,* 555 F.2d 277, 281 (10th Cir. 1977) (quoting *West Texas Refining & Dev. Co. v. Commissioner*, 68 F.2d 77, 81 (10th Cir. 1933)). Four general exceptions to this rule exist that could create liability for the successor: (1) where the purchaser has agreed to assume the selling corporation's debts; (2) "where the transaction amounts to a consolidation or merger of the corporations"; (3) "where the purchasing corporation is merely a continuation of the selling corporation"; and (4) "where the transaction is entered into fraudulently in order to escape liability for such debts." *Id.* at 281–82 (internal quotations omitted); *see also Icon Health & Fitness, Inc. v. Fisher-Price, Inc.*, No. 1:08-cv-10-TS, 2011 U.S. Dist. LEXIS 17340, at *4–5 (D. Utah Feb. 21, 2011) (unpublished) (citing the same general rule and four exceptions under Utah law).

Given the general rule of successor liability, the MFM Shareholders and MVHI would not be responsible for a claim against MFM justifying their addition under Rule 25(c) unless one of the exceptions to successor liability applies. *R.J. Enstrom Corp.,* 555 F.2d at 281–82. No facts before the court indicate the MFM Shareholders or MVHI have acquired an obligation to defend or hold harmless MFM. The next two exceptions to successor liability—a corporate merger or a continuation of the corporation entity—do not apply because of the parties' agreement that MFM was sold, rather than consolidated with or merged into MVHI. (*See* Opp'n 4, Doc. No. 166; Mot. 3, Doc. No. 159.) Instead, Ms. Blackburn appears to rely on the fourth exception to the general rule concerning successor liability, alleging the MFM Shareholders and MVHI orchestrated the sale of MFM to fraudulently avoid liability for any damages award Ms.

Blackburn might receive.  (*See* Ex. A to Mot., Suppl. Compl. ¶¶ 180–202, Doc. No. 159-1.)  As support for her claim that the transfer was improperly made, Ms. Blackburn points to her allegations that MFM was underinsured compared to the value of the claim, the sale price of MFM for between $100,000 and $500,000, and the date of distribution from the sale in relation to the notice of claim.  (Reply 12–13, Doc. 184.)  While these assertions are sufficient to withstand a futility challenge, they do not constitute evidence sufficient to warrant the court exercising its discretion to join the MFM Shareholders and MVHI as new parties under the fourth exception to the general rule of successor liability.

### C.  Service Requirements of Rule 25(c)

Finally, the court considers the implications of Ms. Blackburn's failure to serve MVHI and the MFM Shareholders as required by Rule 25(c).  Rule 25 requires service of the "motion to substitute, together with a notice of hearing" pursuant to Rule 25(a)(3) of the Federal Rules of Civil Procedure, on parties the plaintiff seeks to add under Rule 25(c).  Fed. R. Civ. P. 25(c).  The MFM Shareholders and MVHI are not listed on the certificate of service and did not appear at the hearing on this matter.  (Cert. of Service, Doc. No. 159; *see also* Minute Entry, Doc. No. 207.)  Ms. Blackburn's failure to serve the MFM Shareholders and MVHI denied them an opportunity to appear and independently oppose the motion.  Her failure of service constitutes an independent reason to deny leave to substitute parties under Rule 25(c).  *Cf. Brigham Young Univ. v. Tremco Consultants, Inc.*, 2007 UT 17, ¶ 47, 156 P.3d 782 (holding that a claim against shareholders of a dissolved corporation for the corporation's liabilities must be pursued in a "civil action . . . subject to the full spectrum of due process safeguards").

\*\*\*

27

In sum, Ms. Blackburn can proceed against MFM as a dissolved entity and she has not sufficiently shown a transfer of interest to the MFM Shareholders and MVHI occurred under Rule 25(c).  Finally, she has failed to serve the MFM Shareholders and MVHI as required under Rule 25(c).  For these reasons, the undersigned RECOMMENDS the district judge DENY Ms. Blackburn's request to join the MFM Shareholders and MVHI as parties under Rule 25(c).

## IV.    REQUIRED JOINDER UNDER RULE 19(a)

Ms. Blackburn also contends she should be allowed leave to amend because "MFM's transfer of assets caused its shareholders and transferees . . . to be necessary and indispensable parties," the absence of which would "prevent the court from according complete relief."  (Mot. 8–9, Doc. No. 159.)  Although her analysis is cursory, her argument appears to be based on Rule 19(a) and Utah Code section 16-10a-1408.  (*Id.*)  This argument is unavailing.

Rule 19(a) mandates joinder under certain circumstances if "in that person's absence, the court cannot accord complete relief among existing parties . . . ."  Fed. R. Civ. P. 19(a)(1)(A).  A court can afford complete relief when a party's absence does not prevent the existing parties from obtaining the relief they seek.  *See Wyandotte Nation v. City of Kan. City*, 200 F. Supp. 2d 1279, 1289–90 (D. Kan. 2002).  "'Properly interpreted, the Rule is not invoked simply because some absentee may cause future litigation.'"  *Wheeler Peak, Inc. v. L.C.I.2, Inc.*, No. CIV 07-1117 JB/WDS, 2009 U.S. Dist. LEXIS 78061, at *16 (D.N.M. Aug. 15, 2009) (unpublished) (quoting 4 Moore's Federal Practice - Civil § 19.03(2)(b) (2020)).

Ms. Blackburn can obtain complete relief in this case without adding additional parties and causes of action.  Ms. Blackburn seeks economic and non-economic damages arising from the defendants' alleged negligence that led to her amputations.  (Compl., Prayer for Relief, Doc.

28

No. 2.)  She can obtain a judgment against the remaining defendants without the addition of the MFM Shareholders and MVHI.  Moreover, both parties concede that if the MFM Shareholders and MVHI are not added now, Ms. Blackburn can pursue a separate cause of action against them to satisfy any judgment.  (*See* Opp'n 14, Doc. No. 166; Reply 6, Doc. No. 184.)  Consistent with the concessions of the parties, Utah law allows Ms. Blackburn to bring a voidable transfer action and Section 1408 claim in a separate suit after the conclusion of the medical malpractice action if necessary.  *See Brigham Young Univ. v. Tremco Consultants, Inc.*, 2007 UT 17, ¶ 47, 156 P.3d 782 (holding that Utah Code section 16-10a-1408 requires "the enforcement of a claim against a shareholder of a dissolved corporation to be pursued" in a civil action "subject to the full spectrum of due process safeguards"); Utah Code Ann. § 25-6-202(3) (stating "[a] creditor making a claim for relief" that a transaction is voidable "has the burden of proving the elements of the claim for relief by a preponderance of the evidence").

Because Ms. Blackburn can obtain complete relief in her medical malpractice action against the current defendants, joinder is not mandatory under Rule 19(a).  Accordingly, the undersigned RECOMMENDS that the district judge DENY Ms. Blackburn's request to join the MFM Shareholders and MVHI pursuant to Rule 19(a).

## V.   ATTORNEY'S FEES

The MFM Defendants request an award of reasonable attorney fees incurred in responding to the Plaintiff's motion to amend.  (Opp'n 18, Doc. No. 166.)  In support of this request, the MFM Defendants refer the court to DUCivR 7-1, requiring all motions to state "succinctly the precise relief sought and the specific grounds for the motion."  DUCivR 7-1(a)(1)(A).  The local rule further provides that motions should be supported by citations to

"applicable rules, statutes, case law, or other authority justifying the relief sought." DUCivR 7-1(a)(2). Failure to comply with this requirement can result in an award of sanctions in the court's discretion. DUCivR 7-1(a)(1).

Ms. Blackburn has satisfied the minimal requirements of DUCivR 7-1, thus the undersigned RECOMMENDS the district judge decline to award attorney fees to the MFM Defendants in opposing the motion to amend.

## **RECOMMENDATION**

For the reasons set forth above, the undersigned RECOMMENDS the district judge DENY the Motion for Leave to Amend to Join Transferees and Shareholders of Defendant Moab Family Medicine (Doc. No. 159). The undersigned further RECOMMENDS the district judge DENY the MFM Defendants' request for attorney's fees.

The court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof. *Id.* Failure to object may constitute waiver of objections upon subsequent review.

DATED this 14th day of July, 2020.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge