THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TONYA KIM BLACKBURN,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES; MOAB FAMILY MEDICINE; EVE MAHER-YOUNG, PA-C; and DOE INDIVIDULS 1 through 10,<br><br>　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [235] PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:18-cv-00116-DBB<br><br>District Judge David Barlow |

Plaintiff Tonya Kim Blackburn ("Ms. Blackburn") initiated this medical malpractice case, in part, due to care that she received at the Moab Free Health Clinic ("MFHC"). In its amended answer, the United States asserted that it is not liable for the acts or omissions of health care professionals at MFHC under Utah's charity care statute, Utah Code Ann. § 58-13-3.[1] Pursuant to Federal Rules of Civil Procedure 56, Ms. Blackburn filed a Motion for Partial Summary Judgment on MFHC's defense that it is immune from Ms. Blackburn's medical malpractice claims under Utah's charity care statute.[2] The United States filed a memorandum in

---

[1] ECF No. 57, filed Aug. 17, 2018.
[2] Plaintiff's Motion for Summary Judgment Denying Moab Free Health Clinic's Claim of Immunity Under Utah's Charitable Chare Statute § 58-13-3 as Payment Was Made to MFHC on Behalf of Plaintiff and MFHC's Providers Were Compensated ("Motion for Partial Summary Judgment"), ECF No. 235, filed Dec. 31, 2020.

opposition.[3] Plaintiff replied.[4] Having considered the briefing and relevant law, the court rules as follows.

## BACKGROUND

The MFHC was established in 2008 to provide health care services to the uninsured and underinsured population in and around Moab, Utah. In 2013, MFHC qualified as a "free clinic" per the Department of Health and Human Services, which allowed designated clinic personnel to be covered by the Federal Tort Claims Act ("FTCA") for purposes of medical malpractice claims.[5] As a result, the United States may be found liable for the negligent or wrongful acts or omissions of MFHC. Between January 13, 2015 and February 23, 2015, Ms. Blackburn was seen several times at MFHC with complaints of flank pain, nausea, and pain after urinating. On February 23, 2015, while at MFHC, Ms. Blackburn's vital signs deteriorated quickly. She was airlifted to St. Mary's Medical Center in Grand Junction, Colorado, where she was diagnosed with sepsis, and it was discovered that she had a 13mm kidney stone. Due to reduced blood flow to her extremities, both of Ms. Blackburn's hands and feet were amputated.[6]

Ms. Blackburn filed her complaint on February 5, 2018, asserting two causes of action, in part related to the care she received at MFHC: (1) Negligence/Gross Negligence; and (2)

---

[3] United States' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment Regarding Charity-Care Immunity ("United States' Opposition"), ECF No. 255, filed Jan. 28, 2021.
[4] Plaintiff's Reply Memorandum in Further Support of Her Motion for Summary Judgment Denying Moab Free Health Clinic's Claim of Immunity Under Utah's Charity Care Statute § 58-13-3 as Payment was Made to MFHC on Behalf of Plaintiff and MFHC's Providers Were Compensated [ECF No. 235] ("Plaintiff's Reply"), ECF No. 264, filed Feb. 9, 2021.
[5] 28 U.S.C. § 2674 ("The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.").
[6] Motion for Partial Summary Judgment at 2–3; United States' Opposition at 2.

Vicarious Liability.[7] Ms. Blackburn asserts that the following MFHC agents were negligent and have liability coverage under the FTCA: Elizabeth Holtby, Dr. Patrick Scherer, Kelley Beh, Suzanne Morrison, Beth Joseph, William Cornett, and Megan Downey. On August 17, 2018, the United States filed an amended answer. Under its Thirteenth Defense, the United States asserted immunity under Utah's charity care statute.[8] More specifically, the United States alleged that it "is not liable for the acts or omissions of health care professionals at the Moab Free Health Clinic who received no compensation or remuneration for the care rendered except to the extent that their acts or omissions were grossly negligent or willful and wanton. Utah Code Ann. § 58-13-3."[9]

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[11] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[12]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[13]

---

[7] ECF No. 2. Several defendants have been voluntarily dismissed. The remaining defendants include the United States, Moab Family Medicine, and Eve Maher Young (a physician assistant at Moab Family Medicine). Aside from Ms. Blackburn's visits to MFHC, she was also seen at Moab Regional Hospital and Moab Family Medicine.
[8] ECF No. 57.
[9] *Id*.
[10] Fed. R. Civ. P. 56(a).
[11] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).
[12] *Id.*
[13] *Id.* at 670–71.

## UNDISPUTED MATERIAL FACTS[14]

1. The Moab Free Health Clinic (MFHC) is a nonprofit organization that was established in 2008 to help address the health care needs of the uninsured and underinsured population in and around Moab, Utah.[15]

**Payment to MFHC**

2. Ms. Blackburn was one of eight (8) patients seen on January 13, 2015 at MFHC.[16]

3. Ms. Blackburn's appointment was at 9:20 a.m. on January 13, 2015.[17]

4. Kevin Tangreen drove Ms. Blackburn to her appointment at MFHC on January 13, 2015.[18]

5. MFHC received eight (8) payments or donations from patients on January 13, 2015.[19]

6. Kevin Tangreen paid $20 to MFHC on behalf of Ms. Blackburn. The $20 check is recorded as the transaction occurring at 9:35 a.m. on January 13, 2015.[20]

7. In response to Ms. Blackburn's Request for Production of Documents No. 4, requesting "All donations made by or for Kim Blackburn from 1/1/2010- 1/1/2016," MFHC maintained that "Plaintiff did not donate."[21]

---

[14] For the purposes of this memorandum decision, the court has drawn from the list of undisputed facts offered in the Motion for Partial Summary Judgment, United States' Opposition, and Plaintiff's Reply. The parties' briefing also included some purported undisputed material facts that are not included here because they are not material to the resolution of the motions, were not supported by the cited evidence, or were considered to be argumentative statements and not statements of facts.
[15] United States' Opposition at 6, ¶ 1 (undisputed).
[16] Motion for Partial Summary Judgment at 3, ¶ 1 (undisputed).
[17] *Id*. at 3, ¶ 2 (undisputed).
[18] *Id*. at 4, ¶ 7 (undisputed).
[19] *Id*. at 3, ¶ 3 (undisputed).
[20] *Id*. at 4, ¶ 4 (undisputed).
[21] *Id*. at 4, ¶ 5 (undisputed).

8. As set forth in its Clinical Financial Procedures-Payments and Donations, MFHC recorded a transaction as a "General Donation" if it was a "Donation[] from individuals or grants. . . These are for general support of the Clinic and its programs. This is not a patient's payment for a service."[22]

9. MFHC recorded a patient's payment for a service as "Patient Donation." Defined as "Donation from a patient for a service: medical, ed, mental health, STD testing, insurance enrollment, and other programs."[23]

10. MFHC recorded all eight (8) of the patients' payments on 1/13/15 as "Patient Donation," i.e., a payment "from a patient for a service: medical."[24]

11. The $20 payment for Ms. Blackburn's care was recorded by MFHC as a "Patient Donation," i.e., "A payment from a patient for a service: medical" and not as "General Donation."[25]

**Provider Compensation and Reimbursement**

12. Elizabeth Holtby is a Physician Assistant who is licensed in Colorado.[26]

13. To provide care at MFHC, Ms. Holtby had to be licensed by the Utah Division of Occupational and Professional Licensing, ("DOPL"). There are two types of licenses in Utah for a Physician Assistant: A Volunteer Physician Assistant license and an unrestricted Physician Assistant license. The difference in license type is cost and limitation on location of practice. A volunteer license fee is $0. An unrestricted license fee is $180. A volunteer license restricts the

---

[22] Motion for Partial Summary Judgment at 5, ¶ 16 (undisputed).
[23] *Id*. at 5, ¶ 17 (undisputed).
[24] *Id*. at 5, ¶ 18 (undisputed).
[25] *Id*. at 5, ¶ 19 (undisputed).
[26] *Id*. at 6, ¶ 21; United States' Opposition at 7, ¶ 4.

5

Physician Assistant to volunteer only at the volunteer location. An unrestricted license allows the Physician Assistant to work at any practice anywhere in the state of Utah.[27]

14. MFHC's Medical Volunteer Credentialing From states: "If you do not have a Utah license, [MFHC] will work with you to get a volunteer license."[28]

15. Ms. Holtby's original Application for License to DOPL was for a Retired Volunteer Health Care Practitioner dated 1/10/2013.[29]

16. Sean Buck testified that he was told Ms. Holtby could not get a Volunteer License because she was not retired.[30]

17. Mr. Buck is a former paid VISTA volunteer of MFHC. He is a current Board Member of MFHC and had been involved in more than five Board meetings discussing Ms. Blackburn's case.[31]

18. Ms. Holtby withdrew her application for a Volunteer Physician Assistant License.[32]

19. Ms. Holtby applied for a full unrestricted Physician Assistant License, dated 3/13/13, and paid the $180 application fee.[33]

20. When asked about her decision to apply for a full P.A. license instead of a volunteer license, Ms. Holtby testified:

> A: "If that occurred, it was because I was no longer working or volunteering at the Moab Free Clinic and considered having the option of possibly working in another clinic in Utah.

---

[27] Motion for Partial Summary Judgment at 6, ¶ 22; United States' Opposition at 7, ¶ 5.
[28] Motion for Partial Summary Judgment at 6, ¶ 23 (undisputed).
[29] *Id*. at 6, ¶ 24; United States' Opposition at 7, ¶ 5.
[30] Motion for Partial Summary Judgment at 8, ¶ 35; United States' Opposition at 7, ¶ 6.
[31] Motion for Partial Summary Judgment at 8, ¶ 36 (undisputed).
[32] *Id*. at 7, ¶ 30 (undisputed).
[33] Motion for Partial Summary Judgment at 7, ¶ 31; United States' Opposition at 7, ¶¶ 7–8.

> . . .
> Q: Which clinic were you considering working as a physician's assistant in Utah?
> A: There was no specific clinic. It was to have the option to do that."
> Q: Because you knew with a volunteer healthcare provider license you could not work other than at the Moab Free Health Clinic, right?
> A: That is correct. And I have never worked anywhere other than Moab Free Health Clinic.

(Holtby Depo. 178:13–23, Ex. I.)[34]

21. Ms. Holtby submitted the receipt for the $180 fee she paid for the full unrestricted Utah Physician Assistant license to MFHC seeking reimbursement. Mr. Buck made the handwritten notation "Reimburse $45/clinic, pay total after 4 clinics."[35]

22. During Ms. Holtby's deposition, she was asked:

> Q: Okay. There was an agreement reached between yourself and the Moab Free Health Clinic that you would be reimbursed $45 per clinic to pay a total of $180 after you had completed four clinics, right?
> A: That is correct.

(Holtby Depo. 193:12–16, Ex. I.)[36]

23. MFHC reimbursed Ms. Holtby $180 for her Physician Assistant license.[37]

24. Ms. Holtby obtained her unrestricted Physician Assistant license on 3/14/2013.[38]

25. Elizabeth Holtby stated in her deposition,

> A: To work at the Moab Free Health Clinic, I did not need a full P.A. license.
> Q: But you needed a full P.A. license to work anywhere else in the state of Utah other than the free clinic, right?
> A: Yes.

---

[34] Motion for Partial Summary Judgment at 8, ¶ 37 (undisputed).
[35] *Id*. at 7, ¶ 32 (undisputed).
[36] *Id*. at 7–8, ¶ 33 (undisputed).
[37] Motion for Partial Summary Judgment at 8, ¶ 34; United States' Opposition at 7, ¶ 8.
[38] Motion for Partial Summary Judgment at 9, ¶ 39 (undisputed).

7

> Q: And there was a fee associated with obtaining a full P.A. license in the State of Utah, right?
> A: Yes.
> Q: And that fee is $180, right?
> A: I don't recall what the exact fee was.

(Holtby Depo. 179:4–179:24, Ex. I.)[39]

26. Elizabeth Holtby did not receive a salary, an hourly wage, or any other compensation (beyond the $180 reimbursement) for the services she rendered at MFHC.[40]

27. Ms. Holtby's initial Utah license was scheduled to expire on May 31, 2014. Ms. Holtby renewed the license for an additional two-year term and paid the $123 renewal fee. The MFHC did not reimburse Ms. Holtby for the renewal fee.[41]

28. Ms. Holtby stopped volunteering at MFHC in July 2016.[42]

29. Nurse Kelley Beh was paid an hourly wage for her services at MFHC and received the following payments: $318 on 4/7/14; $324 on 6/12/14; $516 on 7/29/14; $612 on 9/12/14; on $288 11/13/14; $648 on 12/8/14; and $288 on 1/21/15.[43]

30. Suzanne Morrison was paid an hourly wage for her services at MFHC.[44]

31. Beth Joseph was paid a salary for her services at MFHC.[45]

32. In January 2015, Megan Downey and William Cornett worked at the MFHC as volunteers under the VISTA program.[46]

---

[39] Motion for Partial Summary Judgment at 9, ¶ 45 (undisputed).
[40] United States' Opposition at 7, ¶ 9 (undisputed).
[41] *Id*. at 8, ¶ 10 (undisputed).
[42] *Id*. at 8, ¶ 11 (undisputed).
[43] Motion for Partial Summary Judgment at 10, ¶ 46 (undisputed).
[44] *Id*. at 10, ¶ 47 (undisputed).
[45] *Id*. at 10, ¶ 48 (undisputed).
[46] Motion for Partial Summary Judgment at 4, ¶ 6; United States' Opposition at 2-3; 9, ¶ 16.

33.     Ms. Downey and Mr. Cornett staffed the front desk at the MFHC and checked in patients for their appointments.[47]

34.     William Cornett was compensated for his time at MFHC as a VISTA, receiving a stipend of $800 a month.[48]

35.     MFHC paid $100 to William Cornett for a "per diem."[49]

36.     William Cornett extended his AmeriCorps VISTA time a couple of months and MFHC paid $500 in cash to William Cornett.[50]

37.     Megan Downey was compensated for her time at MFHC as a VISTA, receiving a stipend of approximately $700-$750 per month.[51]

**Federal Tort Claims Act liability coverage**

38.     Physician Assistant Elizabeth Holtby, Physician Patrick Scherer, Nurse Kelley Beh, Certified Nursing Assistant Suzanne Morrison, former MFHC Executive Director Beth Joseph, VISTA volunteer William Cornett, and VISTA volunteer Megan Downey are deemed employees of the U.S. who have liability coverage under the Federal Tort Claims Act.[52]

## DISCUSSION

Under the FTCA, liability is determined in accordance with the law of the place where the act or omission occurred.[53] Accordingly, Utah law governs the extent of the United States' liability for eligible MHFC personnel. The Utah legislature passed the charity care statute "to

---

[47] Motion for Partial Summary Judgment at 4, ¶ 6; United States' Opposition at 2–3; 9, ¶ 17.
[48] Motion for Partial Summary Judgment at 10, ¶ 49 (undisputed).
[49] *Id*. at 10, ¶ 50 (undisputed).
[50] *Id*. at 10, ¶ 51 (undisputed).
[51] *Id*. at 10, ¶ 52 (undisputed).
[52] *Id*. at 10, ¶ 53 (undisputed).
[53] 28 U.S.C. § 1346(b)(1).

encourage the provision of uncompensated volunteer charity health care in exchange for a limitation on liability for the health care facilities and health care professionals who provide those volunteer services."[54] Under the charity care statute,

> [A] health care professional who provides health care treatment at or on behalf of a health care facility is not liable in a medical malpractice action if:
> (a) the treatment was within the scope of the health care professional's license[;]
> (b) neither the health care professional nor the health care facility received compensation or remuneration for the treatment;
> (c) the acts or omissions of the health care professional were not grossly negligent or willful and wanton; and
> (d) prior to rendering services:
>   (i) the health care professional disclosed in writing to the patient, or if a minor, to the patient's parent or legal guardian, that the health care professional is providing the services without receiving remuneration or compensation; and
>   (ii) the patient consented in writing to waive any right to sue for professional negligence except for acts or omissions which are grossly negligent or are willful and wanton.[55]

In her Motion for Partial Summary Judgment, Ms. Blackburn asserts that MFHC is not immune from Ms. Blackburn's claim under Utah's charity care statute because the health care facility and health care professionals received remuneration or compensation for Ms. Blackburn's treatment. More specifically, Ms. Blackburn argues that the undisputed material facts demonstrate: (1) payment was made to MFHC on behalf of Ms. Blackburn; and (2) specific MFHC providers were compensated (Elizabeth Holtby, Suzanne Morrison, Beth Joseph, William Cornett, and Megan Downey).

---

[54] Utah Code Ann. § 58-13-3(1)(b).
[55] *Id*. § 58-13-3(3).

### A. Genuine issues of material fact exist regarding whether MHFC received remuneration or compensation on behalf of Ms. Blackburn.

Remuneration or compensation by the health care facility is defined as "direct or indirect receipt of any payment by a health care professional or health care facility on behalf of the patient, including payment or reimbursement under Medicare or Medicaid, or under the state program for the medically indigent on behalf of the patient."[56] Remuneration or compensation does not include "any grant or donation to the health care facility used to offset direct costs associated with providing the uncompensated health care such as: (I) medical supplies; (II) drugs; or (III) a charitable donation that is restricted for charitable services at the health care facility[.]"[57]

It is undisputed that Kevin Tangreen paid $20 on behalf of Ms. Blackburn to MFHC during Ms. Blackburn's January 13, 2015 visit.[58] However, the parties disagree on whether this payment constitutes "remuneration or compensation" under the charity care statute.[59]

Ms. Blackburn argues that a payment is considered remuneration—and not a donation—if the payment was made on behalf of a specific patient.[60] Ms. Blackburn alleges that MHFC demanded payment in exchange for services provided on January 13, 2015; and that Mr.

---

[56] Utah Code Ann. § 58-13-3(2)(d)(i)(A).
[57] *Id*. § 58-13-3(d)(ii)(A).
[58] Motion for Partial Summary Judgment at 4, ¶ 4 (undisputed).
[59] *Compare* Motion for Partial Summary Judgment at 11–13 *with* United States' Opposition at 11–13. Notably, this is not a new dispute between the parties. Ms. Blackburn filed several discovery motions against the United States for its failure to produce documents regarding electronic health records and compensation paid to MFHC providers. In ruling on the discovery motions, the court found that a genuine dispute exists concerning the applicability of the charity care statute and the meaning of "remuneration or compensation" as set forth in the statute. While the court did not resolve that issue, the court found the United States' discovery response (or lack thereof) concerning. The court ordered the United States to produce responsive documents and awarded Ms. Blackburn $17,509.83 in attorney fees and costs. ECF No. 110, entered Sept. 20, 2019.
[60] Motion for Partial Summary Judgment at 12.

Tangreen paid $20 on behalf of Ms. Blackburn to MFHC so that she could receive care.[61] Even if the payment was voluntary, Ms. Blackburn further asserts that it was not a donation as contemplated by the charity care statute and, therefore, still precludes immunity.[62]

The United States asserts that there are genuine issues of material fact regarding Ms. Blackburn's claim that MFHC demanded payment as a condition to treating her.[63] The United States alleges that the $20 payment was entirely voluntary and not in exchange for services provided.[64] Ms. Downey, the volunteer who checked in Ms. Blackburn for her appointment, attests that she never demanded payment from patients or told them they had to donate or pay to be seen.[65] The United States also challenges the reliability of Mr. Tangreen's testimony, stating that he suffered a head injury that might affect his ability to remember things correctly.[66]

Genuine issues of material fact exist that must be resolved to determine whether the $20 payment was remuneration or compensation. Based on the record before the Court, it is unclear whether the payment was a donation used to offset direct costs associated with providing the uncompensated health care.[67] The court is required to view the record and make all reasonable inferences in favor of the non-moving party.[68] Accordingly, Plaintiff has failed to demonstrate that there is no genuine issue of material fact and that she is entitled to judgment on the issue as a matter of law.[69]

---

[61] *Id*.
[62] Plaintiff's Reply at 5.
[63] United States' Opposition at 11–13.
[64] *Id*. at 12.
[65] *Id*.
[66] *Id*. at 11.
[67] Utah Code Ann. § 58-13-3(2)(d)(ii).
[68] *Adler*, 144 F.3d at 670.
[69] *See id*.

> **B.   While it is undisputed that certain MFHC health professionals received compensation, the undisputed facts also demonstrate that Ms. Holtby had not received remuneration or compensation at the time she provided care to Ms. Blackburn.**

Even if MFHC did not receive renumeration or compensation, health care professionals who provided health care treatment at or on behalf of the facility are subject to potential liability in a medical malpractice action if they received compensation or remuneration for the treatment provided.[70] Remuneration or compensation to the health care professional is defined as "compensation, salary, or reimbursement to the health care professional from any source for the health care professional's services or time in volunteering to provide uncompensated health care[.]"[71] Remuneration or compensation does not include "incidental reimbursements to the volunteer," such as food, clothing to help identify the volunteer during time of volunteer services, mileage reimbursement, or other similar support to the volunteer.[72]

Ms. Blackburn asserts that MFHC's agents Elizabeth Holtby, Kelley Beh, Suzanne Morrison, Beth Joseph, William Cornett, and Megan Downey received remuneration or compensation; and therefore, they do not have immunity under Utah's charity care statute as a matter of law.[73] It is undisputed that:

(1) Kelley Beh and Suzanne Morrison were paid an hourly wage by MFHC;
(2) Beth Joseph was paid a salary by MFHC; and
(3) William Cornett and Megan Downey received compensation for their time.[74]

The parties dispute whether Ms. Holtby received remuneration or compensation.

---

[70] Utah Code Ann. § 58-13-3(3).
[71] *Id*. § 58-13-3(2)(d)(i)(B).
[72] *Id*. § 58-13-3(2)(d)(ii)(B).
[73] Motion for Partial Summary Judgment at 13–16.
[74] Motion for Partial Summary Judgment at 10, ¶¶ 46–52 (undisputed). Ms. Blackburn also asserts that Suzanne Morrison, Beth Joseph, William Cornett, and Megan Downey were not licensed health care professionals, and therefore not entitled to immunity, even if they had not been paid. *Id*. at 2; *see also* Utah Code Ann. § 58-13-3(2)(c). The United States does not dispute that the charity care statute does not apply to these individuals.

In order to volunteer at MFHC, Ms. Holtby was required to obtain a Physician Assistant license in the state of Utah. Although Ms. Holtby could have obtained a Volunteer Physician Assistant License free of charge, she chose to obtain an Unrestricted Physician Assistant License to have "the option of possibly working in another clinic in Utah."[75] An unrestricted license costs $180.[76] MFHC reimbursed Ms. Holtby the cost of her unrestricted license fee.[77] The parties dispute whether this reimbursement was made in exchange for Ms. Holtby's services or time (and, therefore, was remuneration or compensation), or whether the reimbursement was incidental to the provision of care (and, therefore, was not remuneration or compensation).

Ms. Blackburn argues that MHCF's reimbursement to Ms. Holtby for her unrestricted Physician Assistant license constitutes remuneration under the charity care statute.[78] She asserts that incidental reimbursements are intended purely to defray actual expenses incurred by volunteering (e.g., mileage, uniforms, or food consumed while providing care).[79] In contrast, Ms. Blackburn received a benefit with pecuniary value—an unrestricted license to practice as a Physician Assistant anywhere in Utah.[80]

The United States responds that there is no evidence Ms. Holtby was compensated.[81] The United States argues that the $180 reimbursement was not for Ms. Holtby's services or time while providing care; instead, it was an incidental reimbursement to her as a volunteer.[82] The United States asserts that incidental reimbursements are intended to alleviate the volunteer's

---

[75] Motion for Partial Summary Judgment at 16.
[76] *Id*. at 6, ¶ 22; United States' Opposition at 7, ¶ 5.
[77] Motion for Partial Summary Judgment at 8, ¶ 34; United States' Opposition at 7, ¶ 8.
[78] Motion for Partial Summary Judgment at 14–16.
[79] Plaintiff's Reply at 15.
[80] *Id*.
[81] United States' Opposition at 1316.
[82] *Id*. at 13–14.

14

costs to allow them to render health care services to disadvantaged people.[83] Moreover, while MFHC reimbursed Ms. Holtby for her first Utah license, it did not reimburse her for the subsequent renewal.[84] Ms. Holtby's initial licensed expired on May 31, 2014.[85] When she renewed her license, she was not reimbursed the $123 renewal fee.[86] Consequently, when she saw Ms. Blackburn in January 2015, she was practicing under a license she had paid for on her own.[87]

       The court need not decide whether reimbursement for a professional license is categorically different from the illustrative list of incidental reimbursements that may be made to volunteer health care professionals under Utah's charity care statute. Even if that reimbursement was "remuneration or compensation" under the statute, that benefit expired when Ms. Holtby's license expired. Ms. Holtby would have been precluded from working at MFHC past May 31, 2014 had she not taken affirmative steps to renew her license. When she did so, she paid the associated $123 fee and was not reimbursed by MFHC. In determining whether the charity care statutory immunity applies, the court looks to the facts that existed at the time of the incident in early 2015—when Ms. Holtby provided services to Ms. Blackburn. At that time, Ms. Holtby was not receiving any "compensation, salary, or reimbursement" from MFHC in order to provide uncompensated health care. Therefore, Ms. Holtby may assert a defense under Utah's charity care statute at trial with respect to the health care treatment she provided at or on behalf of MHFC to Ms. Blackburn in 2015.

---

[83] *Id*. at 14.
[84] *Id*. at 15.
[85] *Id*. at 8, ¶ 10 (undisputed).
[86] *Id*.
[87] *Id*. at 15.

## ORDER

Ms. Blackburn's Motion for Partial Summary Judgment is GRANTED in PART, as follows:

- The following individuals who worked at MFHC are not entitled to immunity under Utah's charity care statute: Suzanne Morrison, Beth Joseph, William Cornett, Megan Downey, and Kelley Beh.

Ms. Blackburn's Motion for Partial Summary Judgment DENIED in PART as follows:

- Genuine issues of material fact exist regarding whether the $20 payment made by Mr. Tangreen on behalf of Ms. Blackburn to MFHC was "remuneration or compensation" or a donation. Therefore, whether MHFC, as a health care facility, is entitled to claim immunity under Utah's charity care statute is an issue for trial.
- Ms. Holtby may assert a defense under Utah's charity care statute at trial.

Signed May 20, 2021.

BY THE COURT

_____
David Barlow
United States District Judge