THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TONYA KIM BLACKBURN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES; MOAB FAMILY MEDICINE; EVE MAHER-YOUNG, PA-C; and DOE INDIVIDULS 1 through 10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART [239] DEFENDANTS MOAB FAMILY MEDICINE AND EVE-MAHER YOUNG, PA-C'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:18-cv-00116-DBB<br><br>District Judge David Barlow |

Defendants Moab Family Medicine and Eve Maher-Young ("Defendants") filed a Motion for Partial Summary Judgment on Plaintiff's claims for gross negligence and punitive damages.[1] Plaintiff Tonya Kim Blackburn ("Plaintiff") filed a memorandum in opposition.[2] Defendants replied.[3] Based upon a review of the pleadings, and relevant law, the Court DENIES Defendants' request for summary judgment on gross negligence and GRANTS Defendants' request for summary judgment on punitive damages.

## BACKGROUND

Plaintiff sought medical care at the Moab Regional Hospital emergency department between December 21, 2014 and December 27, 2014. At that time, she was diagnosed with

---

[1] Defendants Moab Family Medicine and Eve Maher-Young, PA-C's Motion for Partial Summary Judgment and Memorandum in Support ("Motion for Partial Summary Judgment"), ECF No. 239, filed Jan. 11, 2021.
[2] Plaintiff Tonya Kim Blackburn's Opposition to Moab Family Medicine and Eve Maher-Young, PA-C's Motion for Partial Summary Judgment ("Plaintiff's Opposition"), ECF No. 252, filed Jan. 26, 2021.
[3] Defendants Moab Family Medicine and Eve Maher-Young, PA-C's Reply Memorandum in Support of Motion for Partial Summary Judgment ("Defendants' Reply"), ECF No. 266, filed Feb. 9, 2021.

pyelonephritis (i.e., a kidney infection) and prescribed various medications. On December 29, 2014, Plaintiff went to Moab Family Medicine to follow up on her diagnosis. She saw Ms. Maher-Young, a physician assistant.

Sepsis is a life-threatening medical condition in response to an infection. Failure to diagnose and treat sepsis can lead to tissue damage, organ failure, and death. Plaintiff asserts that when she met with Ms. Maher-Young on December 29, 2014, she met the clinical signs and symptoms of sepsis. Plaintiff and her expert witnesses further assert that Ms. Maher-Young's failure to identify Plaintiff's sepsis and the source of her infection constituted gross negligence, warranting punitive damages. Plaintiff also seeks punitive damages against Moab Family Medicine for authorizing, ratifying and/or approving Ms. Maher-Young's actions. Defendants dispute these allegations and seek summary judgment on Plaintiff's gross negligence and punitive damages claims. More specifically, Defendants argue that Ms. Maher-Young's conduct did not manifest a knowing and reckless indifference toward Plaintiff; and even if it did, Moab Family Medicine is not liable for Ms. Maher-Young's actions.

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to

---

[4] Fed. R. Civ. P. 56(a).
[5] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

2

the nonmovant."[6] The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[7] If the movant meets this initial burden, the burden then shifts to the nonmovant to show that there is a genuine issue for trial.[8] To do so, the nonmovant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]

"[T]he standard for granting summary judgment dismissing a gross negligence claim is whether, based on the undisputed material facts, reasonable minds could reach but one conclusion as to whether the defendant 'observe[d] even slight care' and did not demonstrate 'carelessness or recklessness to a degree that shows utter indifference to the consequences that may result.'"[10] A trial court may grant a motion for summary judgment on punitive damages if the facts alleged by the plaintiff, when considered along with the undisputed facts, do not support a finding that the defendant's actions amounted to conduct manifesting a knowing and reckless indifference toward, and a disregard of, the rights of others.[11] In evaluating a motion for summary judgment, the court must apply the standard of proof that would be used for each element at trial.[12] Conduct supporting an award of punitive damages must be established by clear and convincing evidence.[13]

---

[6] *Id.*
[7] *Id.* at 670–71.
[8] *Id.* at 671.
[9] *Id.* (citations omitted).
[10] *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 35, 423 P.3d 1150 (citations omitted).
[11] *Nguyen v. IHC Health Services, Inc.*, 2010 UT App. 85, ¶ 12, 232 P.3d 529 (citing Utah Code Ann. § 78B-8-201(1)(a)).
[12] *Robinson v. Intermountain Health Care*, 740 P.2d 262, 264 (Utah Ct. App. 1987).
[13] Utah Code Ann. § 78B-8-201(1)(a).

## UNDISPUTED MATERIAL FACTS[14]

1. Plaintiff sought urgent care from the emergency department at Moab Regional Hospital on December 21, 2014, December 26, 2014, and December 27, 2014. She was diagnosed with pyelonephritis.[15]

2. On December 29, 2014, Plaintiff saw Eve Maher-Young, PA-C, at Moab Family Medicine, to follow up on her diagnosis of pyelonephritis. Ms. Maher-Young had access to Plaintiff's Moab Regional Hospital records.[16]

3. Ms. Maher-Young noted the following in Plaintiff's chart:

    a. Plaintiff was taking Pyridium;[17]

    b. The nurse read Plaintiff's urinalysis as positive for nitrates;[18]

    c. Plaintiff was finishing up a course of the antibiotic Ceftin and her last urinalysis culture taken three days prior in the emergency room showed no growth;[19] and

    d. Plaintiff's pulse rate was 108 beats per minute and respiratory rate was 32 breaths per minute.[20]

---

[14] For the purposes of this memorandum decision, the court has drawn from the list of undisputed facts offered in the Motion for Partial Summary Judgment, Plaintiff's Opposition, and Defendants' Reply. The parties' briefing also included some purported undisputed material facts that are not included here because they are not material to the resolution of the motion, were not supported by the cited evidence, or were considered to be argumentative statements and not statements of facts. Where a party has not responded to a fact offered by the other party, it is assumed to be undisputed if supported by the record.
[15] Plaintiff's Opposition at 7, ¶ 4; Defendants' Reply at 11.
[16] Motion for Partial Summary Judgment at 3, ¶¶ 1–2; Plaintiff's Opposition at 7–8, ¶ 5; *id.* at 15; Reply at 11.
[17] Plaintiff's Opposition at 8, ¶ 9; Reply at 11.
[18] Plaintiff's Opposition at 9, ¶ 16; Reply at 11.
[19] Motion for Partial Summary Judgment at 3, ¶ 5; Plaintiff's Opposition at 17; Reply at 2.
[20] Motion for Partial Summary Judgment, Tonya Kim Blackburn 12/29/14 Medical Chart, Exhibit 1; Plaintiff's Opposition at 8, ¶ 8 (undisputed).

4. Ms. Maher-Young knew that Pyridium is an analgesic for painful urination and that Pyridium may mask or alleviate dysuria (i.e., painful urination).[21]

5. Ms. Maher-Young knew that nitrates might be an indication of infection.[22]

6. Ms. Maher-Young testified that Plaintiff's increased heart rate of 108 beats per minute was not significant to her because it was not over 120 beats per minute.[23]

7. Ms. Maher-Young did not note the following in Plaintiff's chart:

    a. Whether Plaintiff was taking Zofran.[24]

    b. Whether Plaintiff had taken any antipyretics (i.e., medications that reduce fever).[25]

8. Ms. Maher-Young knew that Zofran is an anti-nausea medication and when a patient is taking Zofran, it will mask the patient's nausea.[26]

9. Ms. Maher-Young noted in the chart twice that she was sending Plaintiff's urine for culture. But, during her deposition, Ms. Maher-Young testified that both chart notations were dictation errors.[27]

10. During her deposition, Plaintiff was asked what she remembered discussing with Ms. Maher-Young on December 29, 2014:

> Q: All right. What else do you remember discussing with Eve that day?
> A: Just that I didn't feel good.
> Q: What part of you didn't feel good?
> A: My kidneys. My urinary. I knew -- I've had enough -- being a woman, I've had enough urinary tract infections to know when it's

---

[21] Plaintiff's Opposition at 8, ¶ 10; Defendants' Reply at 11.
[22] Plaintiff's Opposition at 9, ¶ 16; Defendants' Reply at 11.
[23] Plaintiff's Opposition at 13, ¶ 40; Defendants' Reply at 11.
[24] Plaintiff's Opposition at 9, ¶ 14; Defendants' Reply at 11.
[25] Plaintiff's Opposition at 9, ¶ 15; Defendants' Reply at 11.
[26] Plaintiff's Opposition at 8, ¶ 13; Defendants' Reply at 11.
[27] Plaintiff's Opposition at 9, ¶ 17–18; Defendants' Reply at 11, 13.

>   working and when it's not working. And . . . I don't go to the doctor
>   unless I'm sick and when I go to the doctor, I want them to help me.
>   And I wasn't getting help anywhere I went by that point.

(Blackburn Depo. 40:17-41:6).[28]

11. When asked whether she remembered Ms. Maher-Young giving her a prescription for antibiotics, Plaintiff testified, "No, but I probably got them. I have to be honest; I was sick. I was really sick, and I wasn't getting help and then I still had to go on with life being sick." (*Id.* at 42:3-9).[29]

12. Plaintiff testified that between December 29, 2014 and January 13, 2015, she continued to be sick.[30]

13. Plaintiff did not request or receive any further care from Ms. Maher-Young aside from the December 29, 2014 visit.[31]

14. On February 23, 2015, Plaintiff was seen at Moab Regional Medical Center and transferred via CareFlight to St. Mary's Medical Center. According to Dr. Amir Beshai, Plaintiff's treating physician at St. Mary's Medical Center, Plaintiff had developed urosepsis due to urinary infection and an undiagnosed 13 mm kidney stone.[32]

15. During her deposition, Ms. Maher Young testified that:

    a. Kidneys are vital organs;[33]

---

[28] Plaintiff's Opposition at 9, ¶ 19; Defendants' Reply at 11.
[29] Plaintiff's Opposition at 9–10, ¶ 20; Defendants' Reply at 11.
[30] Plaintiff's Opposition at 10, ¶ 21; Defendants' Reply at 13.
[31] Motion for Partial Summary Judgment at 3, ¶ 7; Plaintiff's Opposition at 18.
[32] Plaintiff's Opposition at 10, ¶ 22; *id.*, Declaration Under Oath of Amir Z. Beshai, M.D., Exhibit G, ¶ 4; Defendants' Reply at 13.
[33] Plaintiff's Opposition at 13, ¶ 38; Defendants' Reply at 11.

b. It is important for a patient to have a kidney stone diagnosed in a timely manner;[34] and

c. An undiagnosed kidney stone can be dangerous because it could obstruct the kidneys, causing damage to the kidneys.[35]

16. On February 5, 2018, Plaintiff filed a Complaint against Moab Family Medicine and Ms. Maher-Young alleging "Negligence/Gross Negligence" and "Vicarious Liability."[36]

17. Plaintiff alleges that "Ms. Maher-Young breached the standard of care by failing to repeat urine culture, consider renal imaging and/or urologic consultation despite ongoing symptoms of flank pain following 8 days of antibiotic therapy for pyelonephritis."[37]

18. In 2014, the Sepsis-2 criteria was the internationally recognized standard of care for identifying sepsis. Under the Sepsis-2 criteria, the diagnosis of sepsis is met when a patient has suspected/confirmed infection with 2 or more clinical signs and symptoms of sepsis, systemic inflammatory response (SIRS).[38]

19. Among other clinical signs and symptoms, SIRS includes: (1) heart rate greater than 90 beats per minute; and (2) respiratory rate greater than 20 breaths per minute.[39]

20. Plaintiff's physician assistant expert, Brian Gallagher, PA-C, has opined that Ms. Maher-Young did not meet the standard of care with regard to the care and treatment of

---

[34] Plaintiff's Opposition at 13, ¶ 39; Defendants' Reply at 11.
[35] Plaintiff's Opposition at 13, ¶ 38; Defendants' Reply at 11.
[36] Complaint and Jury Demand, ECF No. 2 at 14–18, ¶¶ 106–141.
[37] *Id*. at 7, ¶ 37.
[38] Plaintiff's Opposition at 10–11, ¶¶ 28-29; *id*., Christopher Seymour, MD Expert Report, Exhibit D (citing Levy et al. 2001, Crit Care Med) (undisputed).
[39] *Id*.

Plaintiff on December 29, 2014, and that the alleged departure from the standard of care was a cause of Plaintiff's severe sepsis.[40]

21. Mr. Gallagher also opined that Ms. Maher-Young "either knew or should have known that her failures in the care and treatment of [Plaintiff] would, with a high degree of probability, result in substantial harm to her and her care and treatment of [Plaintiff] was highly unreasonable conduct and an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."[41]

22. During his deposition, Mr. Gallagher testified that Plaintiff met sepsis criteria on December 29, 2014 and it was inappropriately addressed at that time. He further stated that "a reasonable provider would have ordered, at minimum, a repeat urinalysis in 48 to 72 hours after antibiotics are complete and in all probability would have ordered a diagnostic test, such as a renal ultrasound or a CT scan with and without contrast. . . . Ms. Maher-Young failed to meet that standard of care and, unfortunately, it was a cause to ultimately lead into [Plaintiff's] septic shock." (Gallagher Depo. at 206:5-207:21).[42]

23. Plaintiff's nephrologist expert, Anna Zisman, M.D., has opined that "[t]o a high degree of medical certainty, the stone in [Plaintiff's] left kidney was present, and imaging was absolutely indicated on: (a) 12/29/14 when she was seen by Eve Maher-Young, PA at Moab Family Medicine (and if any of her supervising physicians would have reviewed Eve's charting, they should have intervened to protect the health, safety and welfare of their patient)[.]"[43]

---

[40] Motion for Partial Summary Judgment at 4, ¶ 12; Plaintiff's Opposition at 19.
[41] Motion for Partial Summary Judgment at 4, ¶ 13; Plaintiff's Opposition at 19.
[42] Motion for Partial Summary Judgment at 4, ¶ 14; Plaintiff's Opposition at 20.
[43] Plaintiff's Opposition at 10, ¶ 26; *id*., Anna L. Zisman, MD Expert Report, Exhibit H at 3 (undisputed).

24. During her deposition, Dr. Zisman clarified that "the modifier of absolutely is a hundred out of a hundred times the test should have been ordered."[44]

**DISCUSSION**

Defendants are seeking summary judgment on Plaintiff's claims for gross negligence and punitive damages. Simple or ordinary negligence will not suffice to support an award of punitive damages.[45] Therefore, the court must first find that there is sufficient evidence supporting Plaintiff's gross negligence claim before analyzing whether punitive damages are warranted.

As discussed below, reasonable minds could conclude that Defendants were grossly negligent in their care and treatment of Plaintiff on December 29, 2014, but the undisputed evidence does not support punitive damages.

### A. Genuine issues of material fact exist regarding whether Defendants were grossly negligent.

Under Utah law, gross negligence "is the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result."[46] To establish gross negligence, "plaintiff must point to evidence that defendant's conduct exposed the plaintiff to a significantly elevated level of risk."[47] "Summary judgment dismissing a gross negligence claim is appropriate where reasonable minds could only conclude that the defendant was not grossly negligent under the circumstances, regardless of whether the standard of care is fixed by law."[48]

---

[44] Plaintiff's Opposition at 21; *id.*, Zisman Depo., Exhibit I at 38:16-24 and 114:5-15; Defendants' Reply at 10.
[45] *Behrens v. Raleigh Hills Hosp.*, 675 P.2d 1179, 1186 (Utah 1983); *Boyette v. L.W. Looney & Son*, 932 F. Supp. 1344 (D. Utah 1996).
[46] *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 16 (citing *Blaisdell v. Dentrix Dental Sys., Inc.*, 2012 UT 37, ¶ 14, 284 P.3d 616).
[47] *Id.* at ¶ 38.
[48] *Id.* at ¶ 16.

Plaintiff alleges that Defendants were grossly negligent in their care and treatment of Plaintiff on December 29, 2014.[49] She has presented supporting evidence, including expert opinion, that she was septic on December 29, 2014 and that Ms. Maher-Young failed to take the appropriate steps to diagnose and treat her sepsis—including a test that 100 out of 100 times should have been ordered.[50] Plaintiff further asserts and has presented evidence that Defendants' alleged conduct magnified the risk of harm to Plaintiff.[51] During her deposition, Ms. Maher-Young testified that an undiagnosed kidney stone can be dangerous and it is important for a patient to have a kidney stone diagnosed in a timely manner.[52] It is undisputed that Plaintiff was ultimately diagnosed with sepsis and that the risk to Plaintiff's health became significantly more life-threatening the longer her sepsis went undiagnosed and untreated.

Defendants dispute that Plaintiff was septic when she saw Ms. Maher-Young on December 29, 2014, primarily alleging that Ms. Maher-Young did not have actual knowledge that Plaintiff was septic.[53] However, actual knowledge is not required to support a gross negligence claim. To the contrary, it is sufficient if the defendant had reason to know of facts that would have created a high degree of risk of physical harm to the plaintiff, but proceeded to act with utter indifference to that risk.[54]

Disputed facts exist regarding whether Ms. Maher's conduct demonstrated "carelessness or recklessness to a degree that shows utter indifference to the consequences that may result."[55]

---

[49] Plaintiff's Opposition at 19.
[50] Plaintiff's Opposition at 5–6, 21.
[51] Plaintiff's Opposition at 4–6.
[52] Plaintiff's Opposition at 13, ¶¶ 38–39; Defendants' Reply at 11.
[53] Motion for Partial Summary Judgment at 8–9; Defendants' Reply at 16–17.
[54] *Penunuri*, 2017 UT 54, ¶ 26.
[55] *Id*. at ¶ 35.

Viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff,[56] reasonable minds could conclude that there was gross negligence under the circumstances of the case. Therefore, Defendants' request for summary judgment on Plaintiff's gross negligence claim is denied.

### B. Plaintiff's alleged facts, taken together with the undisputed facts, cannot support punitive damages against Defendants.

Pursuant to Utah's Punitive Damage Act, "punitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing reckless indifference toward, and a disregard of the rights of others."[57] "[P]unitive damages are not intended as additional compensation to a plaintiff [and] must, if awarded, serve a societal interest of punishing and deterring outrageous and malicious conduct, which is not likely to be deterred by other means."[58] Punitive damages should be awarded only in exceptional cases and are not intended to vent vindictiveness.[59]

Plaintiff asserts that punitive damages are warranted because Ms. Maher-Young's conduct manifested "a knowing reckless indifference toward, and a disregard of the rights of [Plaintiff]."[60] "To prove that a tortfeasor's actions were knowing and reckless, a party must

---

[56] Fed. R. Civ. P. 56(a).
[57] Utah Code Ann. § 78B-8-201(1)(a).
[58] *Behrens v. Raleigh Hills Hosp.*, 675 P.2d 1179, 1186–87 (Utah 1983).
[59] *Id.*
[60] Utah Code Ann. § 78B-8-201(1)(a). Although Defendants noted that Plaintiff's Prayer for Relief does not include punitive damages, Defendants did not further argue that failure to plead punitive damages bars an award at trial. Furthermore, "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

prove that the tortfeasor knew of a substantial risk and proceeded to act or failed to act while consciously ignoring that risk."[61] "On its face, a standard gross negligence claim partially satisfies the 'knowing and reckless indifference' standard because in Utah gross negligence is equated with reckless disregard. . . . Thus, a party seeking punitive damages based on a proven claim of gross negligence, has already satisfied the reckless requirement of the punitive damages statute."[62] "While all gross negligence claimants can automatically claim recklessness, only some may be able to show that a tortfeasor actually knew of the danger of his or her action or inaction, as opposed to should have known of the danger."[63] What constitutes actual knowledge is case specific.[64]

Having determined that Plaintiff's gross negligence claim survives summary judgment, the reckless component required for punitive damages also survives summary judgment. However, to award punitive damages, the defendant's conduct must be both reckless *and knowing*.[65] Therefore, the remaining issues to determine are whether a reasonable factfinder could determine by clear and convincing evidence that Ms. Maher-Young had actual knowledge of the danger created by her conduct to support punitive damages; and, if so, whether punitive damages can also be awarded against Moab Family Medicine for Ms. Maher-Young's conduct.

      **a.**    **The record does not support a finding that Ms. Maher-Young had actual knowledge of the danger created by her conduct.**

To support punitive damages at trial, Plaintiff must establish by clear and convincing evidence that Ms. Maher-Young actually knew of the danger of her action or inaction, as

---

[61] *Daniels v. Gamma West Brachytherapy*, LLC, 2009 UT 66, ¶ 42, 221 P.3d 256.
[62] *Id*. at ¶ 43.
[63] *Id*. at ¶ 44.
[64] *Id*.
[65] Utah Code Ann. § 78B-8-201(1)(a).

opposed to should have known of the danger.[66] Plaintiff argues that Defendants have left out key facts, and that the "omitted facts and expert opinions of Brian Gallagher and Drs. Beshai, Zisman, and Seymour support a jury finding gross negligence and awarding punitive damages."[67] This argument fails for two reasons. First, gross negligence is simply not enough to award punitive damages. As noted previously, while gross negligence satisfies the recklessness requirement, plaintiff must still produce clear and convincing evidence of defendant's actual knowledge of the danger created by his or her acts.[68] Second, two of the of expert reports Plaintiff cites say that Ms. Maher-Young "knew or should have known" certain things.[69] "Should have known" is a negligence concept and cannot support a finding of actual knowledge. The other two expert reports either say nothing about Ms. Maher-Young[70] or say that she should have done but did not do certain things.[71] None of these expert reports, individually or collectively, would permit a reasonable factfinder to determine that Ms. Maher-Young had actual knowledge of the danger allegedly caused by her acts or omissions.[72]

Plaintiff also argues that "Ms. Maher-Young testified that she knew of the danger presented by failing to diagnose Ms. Blackburn's kidney stone."[73] At deposition, Plaintiff's counsel asked Ms. Maher-Young a few questions about undiagnosed kidney stones generally before discussing Plaintiff and her care.[74] Ms. Maher-Young testified that an undiagnosed kidney

---

[66] *Daniels*, 2009 UT 66, ¶ 44.
[67] Plaintiff's Opposition at 24.
[68] *Daniels v. Gamma West Brachytherapy*, LLC, 2009 UT 66, ¶ 42.
[69] Plaintiff's Opposition, Brian Gallagher, PA-C's Expert Report, Exhibit A at 8; *id.*, Christopher Seymour, MD Expert Report, Exhibit D at 11.
[70] *Id.*, Declaration Under Oath of Amir Z. Beshai, MD, Exhibit G at 1–2.
[71] *Id.*, Anna L. Zisman, MD Expert Report, Exhibit H at 2–3.
[72] The parties also dispute whether Plaintiff was septic on December 29, 2014, but that dispute is immaterial for purposes of the actual knowledge inquiry.
[73] Plaintiff's Opposition, 24.
[74] *Id.*, Mayer-Young Depo., Exhibit C at 54–55.

stone could affect urination, make a person feel very sick, and cause kidney damage.[75] But nowhere did she testify that she knew that her treatment of Plaintiff was inadequate, much less dangerous to Plaintiff. Instead, she testified that she observed Plaintiff as well appearing and not in acute distress.[76] Ms. Maher-Young did not believe that Plaintiff's increased heart rate of 108 beats per minute was significant.[77] While a reasonable jury could find that Ms. Maher-Young was mistaken and that she should have taken additional or different actions, Plaintiff has failed to provide sufficient support in the record to indicate that Ms. Maher-Young had actual knowledge of any danger created by her conduct.

The purpose of punitive damages is not to supplement compensatory damages, but to "serve a societal interest of punishing and deterring outrageous and malicious conduct, which is not likely to be deterred by other means."[78] The record before the court cannot support a finding by clear and convincing evidence of the required actual knowledge, nor does it fit the purpose of punitive damages. Therefore, Defendant's Motion for Partial Summary Judgment on Plaintiff's claim for punitive damages with respect to Ms. Maher-Young is granted.

      **b.**      **Moab Family Medicine cannot be held liable for vicarious punitive damages.**

Punitive damages may be awarded against a principal/employer because of an act by an agent/employee if certain conditions are met.[79] As a preliminary matter, punitive damages must first be warranted against the employee based upon the employee's conduct. Because summary judgment is granted with respect to Plaintiff's punitive damages claim against Ms. Maher-

---

[75] *Id.*
[76] Motion for Partial Summary Judgment at 4, Defendants' Statement of Undisputed Material Fact No. 4.
[77] Plaintiff's Opposition at 13, ¶ 40; Defendants' Reply at 11.
[78] *Behrens v. Raleigh Hills Hosp.*, 675 P.2d 1179, 1186 (Utah 1983).
[79] *Hodges v. Gibson Products Co.*, 811 P.2d 151, 163 (Utah 1991).

Young, it is also appropriate to grant summary judgment with respect to Plaintiff's punitive damages claim against Moab Family Medicine.[80]

**ORDER**

Defendants' Motion for Partial Summary Judgment is DENIED in PART with respect to Plaintiff's gross negligence claims against Defendants. Genuine issues of material fact exist regarding whether Defendants were grossly negligent in their care and treatment of Plaintiff.

Defendants' Motion for Partial Summary Judgment is GRANTED in PART with respect to Plaintiff's punitive damage claims against Defendants. Plaintiff may not seek punitive damages against Defendants at trial.

Signed June 23, 2021.

BY THE COURT

_____
David Barlow
United States District Judge

---

[80] The court does not reach Moab Family Medicine's additional arguments for why it should not be subject to punitive damages.