THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TONYA KIM BLACKBURN,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES, et al.,<br><br>　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [241] DEFENDANT UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:18-cv-00116-DBB<br><br>District Judge David Barlow |

Defendant United States of America filed a Motion for Partial Summary Judgment on Plaintiff's claims that the Moab Free Health Clinic ("MFHC") failed to adequately hire, train, and supervise clinic personnel.[1] Because Plaintiff failed to exhaust her administrative remedies with respect to her failure to hire and train claims and because Plaintiff's supervision claims are subject to the discretionary-function exception to the Federal Tort Claims Act, the court GRANTS the United States' motion for partial summary judgment.

## BACKGROUND

From December 21, 2014 through February 23, 2015, Plaintiff saw several different providers at different health care facilities.[2] On December 21, 2014, Plaintiff sought care at the Moab Regional Hospital emergency department where she was diagnosed with pyelonephritis (a kidney infection).[3] She returned to the Moab Regional Hospital emergency department on

---

[1] United States' Motion for Partial Summary Judgment, ECF No. 241 at 1.
[2] ECF No. 241-2 at 3.
[3] *Id.*

December 26, 2014, and December 27, 2014.[4] On January 13, 2015, Plaintiff was seen by Beth Holtby, a physician assistant at MFHC, with complaints of flank pain, nausea, and pain after urinating.[5] Patrick Mark Sherer, D.O., was the medical director and supervising physician of Ms. Holtby at the time.[6] On February 23, 2015, during a follow-up visit at MFHC, Plaintiff was in septic shock and told to go to the emergency room at Moab Regional Hospital.[7] She was airlifted to St. Mary's Medical Center in Grand Junction, Colorado where physicians diagnosed her with sepsis and discovered that she had a kidney stone.[8] Due to reduced blood flow to her extremities, Plaintiff's hands were amputated at the wrist and her feet were amputated mid-foot.[9]

Plaintiff submitted an administrative tort claim to the Department of Health and Human Services ("HHS") related to the care she received at MFHC.[10] She stated that her "Basis of Claim" was the "[f]ailure to diagnose and appropriately treat [her] urinary tract infection [and] kidney stone. . . ."[11] The Basis of Claim listed the persons involved as "Elizabeth Lazier Hotlby, PA-C ('Beth Holtby'); Patrick Mark Scherer, D.O. (Medical Director of Moab Free Health Clinic and Supervising Physician of Physician Assistant, Beth Holtby); W.C.; S.M.; and A.O."[12] HHS denied Plaintiff's claim on February 13, 2017.[13] Plaintiff timely requested reconsideration of HHS's denial of her claim and HHS did not respond to Plaintiff's request for reconsideration.[14]

---

[4] *Id.*
[5] *Id.*
[6] Scherer Dep., ECF No. 263-13 at 84:15–19; Holtby Dep., ECF No. 263-11 at 32:2–4.
[7] ECF No. 241-2 at 6.
[8] *Id.*
[9] *Id.* at 6–9.
[10] ECF No. 241-1 at 1–2.
[11] *Id.* at 1.
[12] *Id.*
[13] ECF No. 241-3 at 1.
[14] ECF No. 241-4 at 1.

Plaintiff initiated this action when she filed her complaint on February 5, 2018. Plaintiff alleged that MFHC failed to provide the minimum standard of care, causing her to develop septicemia and ultimately resulting in the amputation of her limbs.[15] Among the various allegations of negligence and gross negligence, Plaintiff claimed that MFHC failed "to ensure adequate staffing and fail[ed] to oversee, train, supervise, and assure that the staff and employees were sufficiently experienced, trained, and provid[ed] treatment meeting the standard of care."[16] Plaintiff further alleged that under the Federal Tort Claims Act ("FTCA"), the United States is responsible for all acts and omissions of Beth Holtby, Dr. Scherer, and other employees of MFCH.[17]

The MFHC is a free health clinic established in 2008 to help address the healthcare needs of the uninsured and underinsured population in Moab, Utah.[18] MFHC is primarily staffed by volunteer healthcare providers, and the clinic's ability to staff itself is limited by the availability of qualified healthcare providers in Moab.[19] The clinic has adopted policies and procedures regarding employee training and supervision but has not established specific methods or times for training and supervision.[20]

## STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] A factual dispute is genuine when

---

[15] Complaint, ECF No. 2 at ¶ 105.
[16] *Id.* ¶ 124(i).
[17] *Id.* ¶ 5.
[18] Johnson Decl., ECF No. 247-7 at ¶ 1.
[19] *Id.* ¶¶ 6–7.
[20] *Id.* ¶ 8.
[21] Fed. R. Civ. P. 56(a).

"there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[22] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[23] The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[24] If the movant meets this initial burden, the burden then shifts to the nonmovant to show that there is a genuine issue for trial.[25] To do so, the nonmovant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[26]

## DISCUSSION

Plaintiff asserts that, among other things, MFHC failed to hire, train, and supervise clinic personnel. The United States seeks partial summary judgment, arguing that these claims should be dismissed because the court lacks subject-matter jurisdiction for two reasons. First, because Plaintiff did not state these claims in the administrative claim that she presented to HHS prior to initiating this lawsuit and therefore she failed to exhaust her administrative remedies. Second, because MFHC's hiring, training, and supervising actions are discretionary functions that are exempted by the FTCA.

The FTCA "is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the

---

[22] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).
[23] *Id.*
[24] *Id.* at 670–71.
[25] *Id.* at 671.
[26] *Id.* (citations omitted).

scope of their employment."²⁷ This waiver of immunity "must be construed narrowly and the 'limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.'"²⁸ The court examines the United States' claims in turn.

### I. Plaintiff exhausted her administrative remedy for her allegations of negligent supervision, but not for allegations related to hiring and training.

Under the FTCA, claimants must exhaust their administrative remedies by presenting their claim to the relevant federal agency before instituting an action against the United States.²⁹ This administrative-exhaustion requirement is "jurisdictional and cannot be waived."³⁰ The purpose of this requirement is to allow agencies an opportunity to settle disputes before defending against litigation in courts.³¹

The administrative-exhaustion requirement is satisfied if a claimant presents to an agency "(1) a written statement describing the injury in sufficient detail to allow the agency to begin an investigation into the possibility of potentially tortious conduct, and (2) a request for a sum

---

²⁷ *United States v. Orleans*, 425 U.S. 807, 813 (1976).
²⁸ *Miller v. United States*, 463 F.3d 1122, 1123 (10th Cir. 2006) (quoting *In re Franklin Savings Corp.*, 385 F.3d 1279, 1289–90 (10th Cir. 2004)).
²⁹ 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing. . . .").
³⁰ *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016) (quoting *Bradley v. United States by Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991)). Defendant argues that the administrative-exhaustion requirement is not jurisdictional, citing a 2006 case from the Seventh Circuit. Plaintiff's Opposition to Partial Summary Judgment, ECF No. 263 at 31 n. 7 (citing *Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 723 (7th Cir. 2006)). *Glade* relied on the Supreme Court's decision in *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004), in holding that the administrative-exhaustion requirement was not jurisdictional. But *Lopez*, the 2016 Tenth Circuit precedent that binds this court, explicitly states that the requirement is jurisdictional. 823 F.3d at 976. And in *Kontrick* the Supreme Court examined deadlines for objecting to bankruptcy discharge, not FTCA requirements. 540 U.S. at 455. Accordingly, this court will follow the Tenth Circuit's guidance in *Lopez* and will consider the administrative-exhaustion requirement a prerequisite for subject-matter jurisdiction.
³¹ *McNeil v. United States*, 508 U.S. 106, 112 n. 7 (1993).

certain in damages."[32] A claimant is not required to itemize every legal theory they might pursue, only to present facts and a demand for money—"the 'claim' asserted 'encompasses any cause of action fairly implicit in the facts.'"[33] In *Lopez*, the Tenth Circuit held that an administrative claim that described the basis for the claim as arising for medical malpractice in the cutting and removal of a nerve was insufficient to meet the administrative-exhaustion requirement to preserve a negligent credentialing and privileging claim against the hospital.[34] The court reasoned that a negligent credentialing and privileging claim not only requires proof of the negligent acts of a physician, but also requires proof that the hospital breached a legal duty by credentialing and privileging the physician.[35] There, the court found that "[n]othing in Lopez's administrative claim provided the government with notice that it needed to investigate whether the VA Hospital was negligent in credentialing and privileging [the physician], and it was in turn deprived of any opportunity to settle this potential claim without litigation."[36]

In this case, Plaintiff's administrative claim filed with HHS describes the "Basis of Claim" as follows:

> Failure to diagnose and appropriately treat Tonya Kim Blackburn's complicated urinary tract infection/13.6 mm kidney stone resulting in staphylococcus septicemia and quadruple amputation. Persons involved: Elizabeth Lazier Holtby, PA-C ("Beth Holtby"); Patrick Mark Scherer, D.O. (Medical Director of Moab Free Health Clinic and Supervising Physician of Physician Assistant Beth Holtby, W.C.; S.M.; and A.O. Place of Occurrence: Moab Free Health Clinic, 350 South 400 East, PO Box 788, Moab, Utah 84532.[37]

---

[32] *Lopez*, 823 F.3d at 976.
[33] *Id.* (quoting *Murrey v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996)).
[34] *Id.* at 976–77.
[35] *Id.* at 977.
[36] *Id.*
[37] ECF No. 241-1 at 1.

Beyond this statement, Plaintiff also submitted a detailed Notice of Claim letter that included extensive medical records and expert reports.[38]

The United States asserts that Plaintiff's administrative claim failed to give notice of her allegations of deficient hiring, training, and supervision, and consequently, HHS was deprived of the opportunity to evaluate and potentially settle Plaintiff's claims.[39] Plaintiff's "Basis of Claim" and supporting documents submitted with Plaintiff's administrative claim do not mention any facts regarding MFHC's hiring or training of clinic personnel. As a result, HHS received no indication that Plaintiff believed the allegedly negligent care she received at MFHC was related, at least in part, to MFHC's hiring and training practices. The first mention of MFHC's hiring and training appears in Plaintiff's Complaint.[40] The facts here are similar to *Lopez;* nothing in the administrative claim provided notice to HHS that it needed to investigate whether MFHC was negligent in hiring and training its employees. Accordingly, Plaintiff did not exhaust her administrative remedies with respect to her negligent hiring and training claims, and this court does not have subject-matter jurisdiction to hear them.

But the same cannot be said with respect to Plaintiff's claim that MFHC was negligent in supervising clinic personnel. Plaintiff's Basis of Claim and administrative claim identified Dr. Scherer as an individual involved in the failure to diagnose and appropriately treat Plaintiff in his role as the medical director of MFHC and supervising physician of Ms. Holtby.[41] The administrative claim included Plaintiff's medical records and a detailed accounting of the care

---

[38] *See* ECF No. 241-2.
[39] ECF No. 241 at 7–9.
[40] ECF No. 2 at ¶ 124(i).
[41] ECF No. 241-1 at 1; ECF No. 241-2 at 3.

that Plaintiff received at MFHC by Ms. Holtby.[42] Based on the facts provided, specifically identification of Dr. Scherer as the medical director and supervising physician of Ms. Holtby, it can be fairly implied that Dr. Scherer had a responsibility to supervise Ms. Holtby and that he breached that responsibility. Simply put, Plaintiff's Basis of Claim was sufficient to put HHS on notice that it should investigate Dr. Scherer's actions as medical director and supervising physician of Ms. Holtby in the treatment of Plaintiff. Thus, Plaintiff exhausted her administrative remedies for her negligent supervision claim.

Plaintiff argues that *Parker v. United States*[43] supports her contention that she has fully exhausted her administrative remedies.[44] In *Parker*, the District of Nebraska held that the plaintiff had exhausted her administrative remedies to bring a claim for negligent hiring, training, and supervision when she submitted a Basis of Claim to HHS that stated that healthcare providers "were professionally negligent."[45] But in *Parker*, the Plaintiff also submitted documents to HHS that documented regular and persistent problems with the management and competence of the healthcare providers at the hospital, which the court recognized provided HHS with a fair opportunity to investigate claims for negligent hiring, training, and supervision.[46] In contrast, Plaintiff's claim here is much more limited and based on "failure to diagnose and treat."[47] Indeed, the court in *Parker*, citing *Lopez*, explicitly recognized that "[a]n administrative claim that states facts supporting a claim for negligent failure to test for, diagnose, and treat a condition does not necessarily encompass and exhaust claims for negligent hiring, training, or

---

[42] ECF No. 241-2.
[43] No. 8:18CV123, 2018 WL 4953013 (D. Neb. Oct. 11, 2018).
[44] ECF No. 263 at 32–33.
[45] *Parker* at *4–*5.
[46] *Id.* at *5.
[47] ECF No. 241-1 at 1.

supervision. . . ."[48] Thus, *Parker* does not persuade this court that Plaintiff here has exhausted her administrative remedies for negligent hiring and training.

## II. This court does not have jurisdiction to hear Plaintiff's negligent hiring, training, and supervision claims because they are barred by the FTCA's discretionary-function exception.

The FTCA's limited waiver of sovereign immunity is subject to various exceptions, including for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."[49] If an exception to the FTCA applies, "sovereign immunity remains, and federal courts lack jurisdiction."[50]

To determine if a governmental function or duty falls under the discretionary-function exception, the Supreme Court has developed a two-part test: first, the court must determine whether the action in question is discretionary, in other words, "whether the action is a matter of choice for the acting employee."[51] And second, the court must determine whether the action is the kind that the discretionary-function exception was designed to shield—"only governmental actions and decisions based on considerations of public policy" are protected from liability.[52] Both conditions must be met for the discretionary-function exception to apply and preclude suit under sovereign immunity.[53] Because the FTCA is a jurisdictional statute, the plaintiff bears the

---

[48] *Parker* at *5 n. 4.
[49] 28 U.S.C. § 2680(a).
[50] *Garling v. U.S. Envtl. Prot. Agency*, 849 F.3d 1289, 1294 (10th Cir. 2017).
[51] *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).
[52] *Id.* at 536–37.
[53] *Garling*, 849 F.3d at 1295.

burden of proving that sovereign immunity has been waived and must show that either prong of the *Berkovitz* test is not met for a claim to proceed.[54]

### A. MFHC's decisions regarding hiring, training, and supervision of clinic personnel are discretionary.

The first step in the discretionary-function analysis is to determine if the challenged conduct is discretionary. Conduct is not discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive."[55] But if the conduct involves "an element of judgment or choice," then the action is discretionary and the court proceeds to the second step of the analysis.[56]

Here, the United States argues that MFHC's decisions regarding hiring, training, and supervision of clinic personnel are matters of judgment and choice, and therefore fall under the discretionary-function exception.[57] It contends that there are no federal statutes, rules, or regulations that required MFHC to follow specific mandates with respect to hiring, training, and supervision of clinic personnel, and that MFHC's internal policies and procedures do not qualify as the type of mandate that would deprive MFHC employees from exercising discretion.[58]

In response, Plaintiff asserts that MFHC's hiring, training, and supervision were not discretionary because federal law mandates that free health clinics such as MFHC implement policies and procedures designed to reduce the risk of malpractice to reduce the federal

---

[54] *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008).
[55] *Berkovitz*, 486 U.S. at 536.
[56] *Id.*
[57] ECF No. 241 at 11–13.
[58] *Id.* at 11.

government's exposure "to an unreasonably high degree of risk of loss."[59] In order to be deemed a covered entity under FTCA, MFHC had to submit an application that included "appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity."[60] Plaintiff argues that once MFHC's policies were accepted by HHS and the clinic was designed as a free health clinic, MFHC no longer had discretion to follow those policies.[61]

Decisions regarding the hiring, training, and supervision of MFHC personnel involved the exercise of judgment by MFHC employees. Discretionary conduct is any conduct by a government actor that involves an element of judgment or choice, it "is not confined to the policy or planning level."[62] "Day-to-day management of . . . businesses regularly requires judgment as to which of a range of permissible courses is the wisest."[63] For example, the District of New Mexico recognized that the discretionary function exception barred a negligent training claim in a hospital because "the manner in which a hospital trains its medical staff to care for premature babies generally appears to be a function that carries with it a large measure of discretion."[64]

Here, MFHC's internal policies and procedures provided general guidelines while still leaving the ultimate decision to the discretion of clinical personal.[65] Even though federal law

---

[59] 42 U.S.C. § 233(g)(1)(D), (h)(1), (i)(1).
[60] *Id.*; ECF No. 263-2.
[61] ECF No. 263 at 38.
[62] *United States v. Gaubert*, 499 U.S. 315, 325 (1991).
[63] *Id.* at 325. Courts in the Tenth Circuit have recognized that decisions about training are discretionary functions, as the relevant agency "must weigh the costs, time, and benefits of training." *De Baca v. United States*, 399 F. Supp. 3d 1052, 1223 (D.N.M. 2019) (citing *Kelly v. United States*, 241 F.3d 755, 763 (9th Cir. 2001); *Redmon v. United States*, 934 F.2d 1151, 1156 (10th Cir. 1991); *Garcia v. United States*, 709 F. Supp. 2d 1133, 1151–52 (D.N.M. 2010)).
[64] *Tolbert v. Gallup Indian Med. Ctr*, No. CIV 19-0830 JB/LF, 2021 WL 3635466, at *27 (D.N.M. Aug. 17, 2021).
[65] Johnson Decl., ECF No. 241-7 at ¶ 8.

directed MFHC to take steps to reduce the risk of malpractice and related lawsuits, the exact action that MFHC took to do so was left up to its discretion.[66] MFHC's internal policies and procedures are applicable only to MFHC and did not create HHS agency-wide policy. If every HHS approval of a regional clinic's policies and procedures created agency-wide policy, then thousands of potentially conflicting policies would apply to clinics across the country.

To show that conduct is not discretionary, Plaintiff must point to a prescribed course of action that is "specific and mandatory;"[67] she has not done so here. The Tenth Circuit has rejected the argument that broad statutory duties prescribe a specific and mandatory course of conduct.[68] In *Daigle*, the Tenth Circuit held that CERCLA's command that federal agencies protect the public health and safety was not a specific and mandatory directive.[69] And in *Allen*, the Tenth Circuit held that the statutory directive that open-air nuclear tests should be conducted so as not to jeopardize the health and safety of the population downwind was not a specific and mandatory directive because it left it to the Atomic Energy Commission to determine how to attain this goal.[70] Likewise, the statutory provision to which Plaintiff cites is not a specific and mandatory directive. It establishes a requirement that clinics "implement appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health-related functions performed by the entity."[71] But, like the statute in *Allen*, it leaves the decision

---

[66] *See* 42 U.S.C. § 233(h)(1) ("The Secretary may not approve an application under subsection (g)(1)(D) unless the Secretary determines that the entity . . . has implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity.").
[67] *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998).
[68] *See Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1540 (10th Cir. 1992); *Allen v. United States*, 816 F.2d 1417, 1421 (10th Cir. 1987).
[69] *Daigle*, 972 F.2d at 1540.
[70] *Allen*, 816 F.2d at 1421.
[71] 42 U.S.C. § 233(h)(1).

of how to implement this goal to the individual entity—in this case, the MFHC. The conduct at issue here involves "an element of judgment or choice," making the action is discretionary.[72]

Plaintiff also argues that *Gess v. United States* supports her contention that the MFHC did not perform a discretionary function in its hiring, training, and supervision of its employees.[73] In *Gess*, the Middle District of Alabama held that the discretionary-function exception did not apply because an Air Force physician failed to comply with Joint Commission of Accreditation for Hospitals ("JACH") standards, which are made applicable by Air Force regulations.[74] But *Gess* is inapposite here. In *Gess*, the court relied on agency-wide policy promulgated by the Air Force itself (the JACH standards). In contrast, MFHC's internal policy and procedures were not agency-wide policy but were submitted to HHS subject to approval. HHS approval of MFHC's internal policy did not elevate the policy to agency-wide status. Accordingly, MFHC's decisions regarding hiring, training, and supervision of clinic personnel are discretionary.

### B. MFHC's decisions regarding hiring, training, and supervision of clinic personnel are susceptible to public policy considerations.

The next step in the discretionary-function exception inquiry is to determine whether MFHC's decisions and actions are susceptible to public policy considerations. "The discretionary function exception applies only to conduct that involves the permissible exercise of policy judgment."[75] "The focus of the inquiry is not on the agent's subjective intent in exercising the

---

[72] *Berkovitz*, 486 U.S. at 536.
[73] ECF No. 263 at 36–37.
[74] *Gess v. United States*, 952 F. Supp. 1529, 1552 (M.D. Ala. 1996).
[75] *Berkovitz v. United States*, 486 U.S. 531, 539 (1988).

discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."[76]

Congress designed the discretionary-function exception to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."[77] And the Tenth Circuit has recognized that "Such sensitive decisions [regarding employment and termination] are precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing."[78]

MFHC's decisions regarding hiring, training, and supervision of clinic personnel are susceptible to policy analysis because they depend on a variety of factors, including the amount of funding and availability of health-care practitioners. MFHC's co-founder and board president, Danette Johnson, testified that the clinic's personnel decisions depend on a variety of factors, and that the clinic must weigh those factors to make hiring, training, and supervision decisions.[79]

---

[76] *United States v. Gaubert*, 499 U.S. 315, 325. The Supreme Court in *Gaubert* pointed to the example of a government agent driving a car as an action that is discretionary but not susceptible to policy analysis. *Id.* at 325 n. 7.
[77] *Berkovitz*, 486 U.S. at 536–37 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)).
[78] *Richman v. Straley*, 48 F.3d 1139, 1147 (10th Cir. 1995); *see also Sydnes v. United States*, 523 F.3d 1179, 1186 (10th Cir. 2008) ("[E]mployment and termination decisions are, as a class, the kind of matters requiring consideration of a wide range of policy factors, including "budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition."). Other courts have been even more specific. *See Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("The hiring, training, and supervision choices that WMATA faces are choices 'susceptible to policy judgment.' The hiring decisions of a public entity require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, 'individual backgrounds, office diversity, experience and employer intuition.'").
[79] Johnson Decl., ECF No. 241-7 at ¶ 6 ("The MFHC's ability to staff the clinic is limited by the availability of qualified health-care providers in the small Moab community and the willingness of the providers to volunteer their services."); *Id.* ¶ 7 ("The MFHC's ability to attract and retain paid staff is limited by the availability of qualified practitioners and the clinic's limited funding for such purposes."); *Id.* ¶ 8 ("[T]he policies and procedures set forth a supervisory structure for clinic personnel but do not establish specific methods of supervision."); *Id.* ¶ 9 ("The goal of training and supervision at the MFHC is to create an environment in which patients can access timely, quality health-care services within the constraints of the clinic's available funding and the limited availability of volunteer health-care providers.").

There is no genuine issue of material fact here. MFHC's decisions regarding hiring, training, and supervision fall squarely within the realm of conduct subject to the discretionary-function exception.

Plaintiff argues that in *Bennett v. United States*, a different district court held that once healthcare safety standards were adopted the implementation of those standards is not susceptible to policy considerations.[80] In *Bennett*, a hospital reapproved a doctor to treat female patients where the doctor already had a history of inappropriate contact with female patients.[81] The court held that the hospital's decision to lift the restrictions on the doctor's access to female patients was not subject to the discretionary-function exception because "[t]he decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not."[82] But the court's decision in *Bennett* was based on one specific decision to lift restrictions on a particular doctor, while here Plaintiff criticizes alleged systemic deficiencies in MFHC's hiring, training, and supervision decisions.[83] MFHC's supervision policy, informed by budgetary constraints and staff availability, is "administrative action the discretionary function exception seeks to shield from judicial second-guessing."[84]

As noted earlier, the waiver of sovereign immunity "must be construed narrowly" and "exceptions thereto are not to be implied."[85] Plaintiff has the burden of showing that sovereign

---

[80] ECF No. 263 at 40–41.
[81] *Bennett v. United States*, 375 F. Supp.3d 1180, 1182–83 (W.D. Wash. 2019). Additionally, neither *Bennett* nor the other cases Plaintiff cites regarding the specific application of the discretionary-function exception are binding authority.
[82] *Id.* at 1189 (quoting *Whisnant v. United States*, 400 F.3d 1177, 1182 (9th Cir. 2005)).
[83] ECF No. 263 at 3 ("Ms. Blackburn was injured because the individuals hired by MFHC did not comply with federally accepted policies and procedures by inter alia conducting required supervision, thereby subjecting the Government to the risk of loss. The failure was systemic.").
[84] *Richman v. Straley*, 48 F.3d 1139, 1147 (10th Cir. 1995).
[85] *Miller v. United States*, 463 F.3d 1122, 1123 (10th Cir. 2006) (quoting *In re Franklin Savings Corp.*, 385 F.3d 1279, 1289–90 (10th Cir. 2004)).

immunity was waived,[86] and she has not made that showing. Plaintiff's claims regarding hiring, training, and supervision of clinic personnel are barred by the discretionary-function exception. The court lacks subject-matter jurisdiction to hear those claims.

## ORDER

Plaintiff failed to exhaust her administrative remedies for her claims based on negligent hiring and training. Furthermore, the discretionary-function exception to the FTCA bars Plaintiff's claims based on negligent hiring, training, and supervision. The United States' Motion for Partial Summary Judgment is GRANTED.

Signed September 28, 2021.

BY THE COURT

David Barlow
United States District Judge

---

[86] *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008).